**FILED**

**JANUARY 3, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, WESTERN DIVISION

| | | |
|---|---|---|
| **RICHARD L. PERSINO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No.** |
| | ) | |
| **UNUM GROUP d/b/a UNUM LIFE** | ) | |
| **INSURANCE COMPANY OF** | ) | |
| **AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**08 C 50004**

**JUDGE KAPALA**
**MAGISTRATE JUDGE MAHONEY**

### NOTICE OF REMOVAL OF CIVIL ACTION

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, WESTERN DIVISION:**

Defendant/removing party, UNUM LIFE INSURANCE COMPANY OF AMERICA incorrectly named as UNUM GROUP d/b/a UNUM LIFE INSURANCE COMPANY OF AMERICA ("Unum Life Insurance Company of America" or "defendant/removing party"), by its attorneys, Michael J. Smith and Warren von Schleicher, hereby provides notice of removal pursuant to 28 U.S.C. §1441, *et. seq.*, and respectfully presents this Court the following grounds for removal:

1.  Defendant/removing party is the defendant in an action captioned *Richard L. Persino v. Unum Group d/b/a Unum Life Insurance Company of America*, No. 07 LA 410 pending in the Circuit Court of the Twenty Second Judicial Circuit, McHenry County, Illinois.

2.  The aforementioned entitled action was commenced against the defendant/removing party in the Circuit Court of the Twenty Second Judicial Circuit, McHenry County, Illinois on November 27, 2007 and is still pending therein.

3.     On December 4, 2007, the Summons and Complaint in the aforesaid entitled action were served on the defendant/removing party.  A copy of the Summons and Complaint, with Exhibits A through G attached thereto, that were, in fact, served on defendant/removing party in the above entitled action are attached hereto as Exhibits A and B, respectively; this constitutes all of the process, pleadings and orders served on defendant/removing party.

4.     Accordingly, defendant/removing party, Unum Life Insurance Company of America, is required to file its Notice of Removal on or before January 3, 2008 (30 days after service of the Complaint). Given that defendant/removing party, Unum Life Insurance Company of America, in fact, has filed its Notice of Removal on or before January 3, 2008, the Notice of Removal of defendant/removing party is presented and filed in a timely manner and in compliance with the provisions of 28 U.S.C. §1446(b).

5.     The above entitled action is a civil action in which plaintiff requests, in Count I, a declaration of the rights and obligations of the parties in connection with a disability insurance policy issued to by Unum Life Insurance Company of America to The American College of Obstetricians and Gynecologists under which plaintiff was an insured.  In addition, in Count II of his Complaint, plaintiff asserts a claim for breach of contract related to the disability policy and requests judgment in his favor and against Unum Life Insurance Company of America in excess of $50,000.00. Finally, in Count III of the Complaint, plaintiff alleges that Unum Life Insurance Company of America has committed fraud related to the aforesaid disability insurance policy and plaintiff requests additional damages in excess of $50,000.00.  Defendant/removing party contends, *inter alia*, that its actions in connection with the plaintiff's disability insurance policy were appropriate and, therefore, that plaintiff is not entitled to any of the damages that he requests be awarded to him.  By reason of the foregoing requests for damages sought by plaintiff

in Counts I, II and III of the Complaint, the total amount of damages demanded, by the Complaint, at the time the Complaint was filed, exceeds the jurisdictional limit of $75,000.00.

6.    Plaintiff, Richard L. Persino, for purposes of diversity jurisdiction, is a citizen and resident of the State of Illinois; defendant/removing party, Unum Life Insurance Company of America, is a corporation duly organized and existing under and by virtue of the laws of the State of Maine, with its principal place of business in Portland, Maine.  Unum Life Insurance Company of America is a wholly owned subsidiary of Unum Group and Unum Group is not doing business as Unum Life Insurance Company of America, as stated in the caption of plaintiff's Complaint.  Unum Group is a corporation duly organized under the laws of the State of Delaware with its principal place of business in Chattanooga, Tennessee.  Unum Life Insurance Company of America, therefore, is a citizen and resident of the State of Maine and Unum Group is a citizen and resident of the States of Delaware and Tennessee.  Diversity among the parties, therefore, exists.

7.    The above entitled action is a civil action related to a disability income insurance policy issued by Unum Life Insurance Company of America to The American College of Obstetricians and Gynecologists under which plaintiff was an insured.  Plaintiff claims that Unum Life Insurance Company of America wrongfully terminated his insurance coverage under the terms and conditions of the Policy.  Defendant/removing party contends, *inter alia*, that it did not wrongfully terminate plaintiff's insurance coverage.  Because there is complete diversity between the parties to this matter and the amount in controversy exceeds $75,000.00, exclusive of interest and costs, defendant/removing party, Unum Life Insurance Company of America, is entitled to removal of this matter from state court to federal court pursuant to 28 U.S.C. §1441, *et. seq.*

8.     This Court has original jurisdiction of the above entitled action pursuant to 28 U.S.C. §1332 and the action may, therefore, be removed to this Court pursuant to 28 U.S.C. §1441 and 28 U.S.C. §1446.

9.     Consistent with the holding in *Rubel v. Pfizer, Inc*., 361 F.3d 1016, 1018 (7th Cir. 2004), it is the good faith belief of defendant/removing party that the amount in controversy exceeds the jurisdictional amount.

10.     This Notice of Removal is filed with this court within 30 days after service of the Summons and Complaint on defendant/removing party which occurred on December 4, 2007.

WHEREFORE, defendant/removing party, UNUM LIFE INSURANCE COMPANY OF AMERICA incorrectly named as UNUM GROUP d/b/a UNUM LIFE INSURANCE COMPANY OF AMERICA, requests that the above entitled action be removed from the Circuit Court of the Twenty Second Judicial Circuit, McHenry County, Illinois to this Court.

Dated this 3rd day of January, 2008.

Respectfully submitted,


By: /s/ Michael J. Smith
          Attorney for Defendant/Removing Party,
          Unum Group d/b/a Unum Life Insurance
          Company of America

Michael J. Smith, ARDC #2649691
Warren von Schleicher, ARDC #6197189
Smith, von Schleicher & Associates
39 S. LaSalle St., Suite 1005
Chicago, Illinois  60603
(312) 541-0300
(312) 541-0933 Fax
michael.smith@svs-law.com
warren.vonschleicher@svs-law.com

4

# EXHIBIT A
# TO REMOVAL PETITION

*SUMMONS – 30 DAY*
**IN THE CIRCUIT COURT OF THE TWENTY-SECOND JUDICIAL CIRCUIT**
**McHENRY COUNTY, ILLINOIS**

(Name all parties)

**RICHARD L. PERSINO**

_____

_____

Plaintiff(s)

vs.

**UNUM GROUP d/b/a**

**UNUM LIFE INSURANCE COMPANY**

**OF AMERICA**

Defendant(s)

Case Number ___07LA410___

Amount Claimed $ **In excess of $50,000.00**

**+ costs**

# SUMMONS

**To each Defendant:**

   **YOU ARE SUMMONED** and required to file an answer in this case, or otherwise file your appearance, in the office of the Clerk of this court, McHenry County Government Center, 2200 N. Seminary Avenue, Woodstock, Illinois, 60098, within 30 days after service of this summons, not counting the day of service. **IF YOU FAIL TO DO SO, A JUDGMENT OR DECREE BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT.**

**To the officer:**

   This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than 30 days after its date.

WITNESS ___November 27 20 07___

___Vernon W Kays Jr___

Clerk of the Circuit Court

---

Plaintiff's attorney or plaintiff if he is not represented by an attorney

Name **R.M.Lee/Gummerson & Rausch**

Attorney for **Richard L. Persino**

Address **101 S. Benton St., Suite 201**

City, State Zip **Woodstock, IL  60098**

Telephone **815-337-7700**

Prepared by **R.M.Lee/Gummerson & Rausch**

Attorney for **Plaintiff**

Attorney Registration No. **6280448**

# EXHIBIT B
# TO REMOVAL PETITION



IN THE CIRCUIT COURT OF THE 22ND JUDICIAL CIRCUIT
MCHENRY COUNTY, ILLINOIS

RICHARD L. PERSINO,      )
     Plaintiff,          )
                     )
     vs.               )
                     )
UNUM GROUP d/b/a UNUM LIFE  )
INSURANCE COMPANY OF     )
AMERICA,               )
     Defendant.        )

07 __LA 416__

**FILED**

NOV 27 2007

VERNON W. KAYS, JR.
McHENRY CTY CIR. CLK.

JURY DEMAND

## COMPLAINT

NOW COMES the Plaintiff, RICHARD L. PERSINO, an Illinois resident (hereinafter

"Plaintiff") by and through his attorneys, GUMMERSON & RAUSCH, LLC, and for his

Complaint against UNUM GROUP d/b/a UNUM LIFE INSURANCE COMPANY OF

AMERICA (hereinafter "Defendant"), states as follows:

### JURISDICTION AND VENUE

1.     This civil action is for declaratory judgment, breach of contract, and fraud under

statutory and common law of the State of Illinois.

2.     Jurisdiction in the State of Illinois is proper pursuant to 735 ILCS 5/2-209(a)(1)

because Defendant transacted business within the state of Illinois.

3.     Venue is proper in McHenry County, Illinois pursuant to 735 ILCS 5/2-101(2)

because the contract at issue was entered into in McHenry County, Illinois.

### THE PARTIES

4.     Plaintiff is an Illinois resident and a licensed physician who practices obstetrics

and gynecology. At all times relevant hereto he resided at 3612 Needle Creek

1

Court, Crystal Lake, McHenry County, Illinois. At all times relevant hereto he practiced medicine in Crystal Lake, McHenry County, Illinois.

5.    Defendant is an insurance company which does business within the state of Illinois. Upon information and belief, the Defendant is, and at all times relevant hereto was, a professional corporation incorporated in the State of Delaware with its principal place of business at 18 Chestnut Street, Worcester, MA.

## COMMON FACTS

6.    On or about July 1, 2001 Defendant issued a disability insurance policy to The American College of Obstetricians and Gynecologists. Plaintiff was the named insured of such policy, policy number 1074, certificate number 703923. Plaintiff was issued a Certificate of Insurance outlining his benefits under the policy. Attached hereto and made a part hereof as Exhibit "A" is a true and correct copy of said Certificate of Insurance.

7.    Pursuant to the Certificate of Insurance, Plaintiff was billed for and paid semi-annual premiums of One Thousand Five Hundred Seventy-Five and 00/100 dollars ($1,575.00).

8.    From the inception of his policy until he became eligible for waiver of premium because of disability under his policy, Plaintiff timely paid all premiums due under the policy.

9.    The policy issued to Plaintiff by Defendant defines disability as "a Total Disability or Residual Disability." See page 3 of Exhibit A.

10.   The policy issued to Plaintiff by Defendant defines partial disability as meaning "that You, because of Injury or Sickness, are: (1) continuously unable to perform

2

the substantial and material duties of Your regular occupation; (2) under the regular care of a physician, other than Yourself; and (3) gainfully employed in Your regular occupation on a partial and/or part-time basis." See page 5 of Exhibit A.

11.    The policy issued to Plaintiff by Defendant states, in part, "[w]hile Disabled, You are eligible to receive one of the following benefits at any given time: a Total Disability Benefit, or a Residual Disability Benefit." See page 6 of Exhibit A.

12.    On or about November 25, 2002, Plaintiff was diagnosed with Stage IV Non-Hodgkin's lymphoma. Severe fatigue caused by the condition caused Plaintiff to reduce his work load to part-time. Plaintiff's reduced work hours resulted in reduced income to Plaintiff.

13.    Thereafter, Plaintiff submitted to Defendant a claim for disability benefits.

14.    On or about January 24, 2003 Defendant began paying to Plaintiff disability benefits in accordance with his policy.

15.    The policy issued to Plaintiff by Defendant provides for payment of a residual disability benefit as follows: "[w]e will pay a Residual Disability Benefit, if You satisfy the Earnings Qualifier, for each month of Disability which follows: (1) the Elimination Period; or (2) a period for which Total Disability Benefits were payable. The Residual Disability Benefit will be equal to the Monthly Benefit amount multiplied by the Loss of Earnings Ratio. Residual Disability Benefits will cease on the earliest of the following to occur: (1) the date You earn more than 80% of Your Pre-Disability Earnings; (2) the date You are no longer

3

Disabled; or (3) the end of the Maximum Period Payable." See page 6 of Exhibit A.

16. The policy issued to Plaintiff by Defendant defines 'earnings qualifier' as meaning "that You may be considered Disabled during and after the Elimination Period if an Injury or Sickness is causing physical or mental impairment to a degree of severity that You are unable to perform all of the Material and Substantial duties of Your Occupation on a full-time basis, however You are: (1) Gainfully employed in any occupation for which You are qualified by education, training or experience, on a full-time or part-time basis; and (2) Receiving Appropriate and Regular Care from a Doctor, other than Yourself; and (3) Disabled to the extent that You are unable to earn more than 80% of Your Pre-Disability Earnings." See page 4 of Exhibit A.

17. The policy issued to Plaintiff by Defendant defines 'earnings' as "the monthly income from wage or salary You earn for services performed by You during each month of Residual Disability for which claim is made. Monthly Income includes bonuses, commissions, fees or other remuneration earned for services performed by You from Your occupation after deduction of normal and customary business expenses but before deduction of any income taxes. Monthly Income does not include dividends, rents, royalties, annuities or other forms of unearned income or any income You receive not directly derived from Your occupation." See page 4 of Exhibit A.

18. The policy issued to Plaintiff by Defendant defines 'pre-disability earnings' as "the average monthly income from Your Occupation for the 24 months

4

immediately prior to the date the Disability began. Monthly income includes

bonuses, commissions, fees or other remuneration earned for services performed

by You from Your occupation after deduction of normal and customary business

expenses but before deduction of any income taxes. Monthly income does not

include dividends, rents, royalties, annuities or other forms of unearned income or

any income You receive not directly derived from Your occupation." See page 5

of Exhibit A.

19.    Prior to August 1, 2005 Plaintiff co-owned a medical practice in Crystal Lake,

McHenry County, Illinois.

20.    To assist in Defendant's calculation of Plaintiff's 'pre-disability earnings' Plaintiff

provided Defendant with schedules of his quarterly earnings for 2000, 2001, and

2002. Attached hereto and made a part hereof as Exhibits "B-1, B-2, and B-3" are

true and correct copies of the statements of Plaintiff's earnings for 2000, 2001,

and 2002.

21.    On or about August 1, 2005 Plaintiff entered into an employment contract with

and began working for Mercy Health System as a physician with a specialty in

obstetrics and gynecology. Attached hereto and made a part hereof as Exhibit "C"

is a true and correct copy of employment agreement between Plaintiff and Mercy

Health System.

22.    Plaintiff's employment agreement with Mercy Health System provided for

compensation for Plaintiff of "fifty percent (50%) of [his] Net Professional Patient

Billings" or "gross professional patient billings for physician services (but not for

5

ancillary services) including a fee for service equivalency for services provided to capitated programs, less Medicare and Medicaid contractual write-offs, usual and customary reductions by private insurances and managed care discounts." The contract further provided that Mercy Health System would "estimate installment payments by reference to [Plaintiff's net professional patient billings] in the immediately preceding Contract Year." And at the end of each contract year, Mercy Health System would determine the total of estimate payments in the contract year and reconcile that amount with the total actual net professional patient billings. If the actual amount exceeded the estimated amount, then Mercy Health System was to pay the amount of excess within one hundred twenty (120) days of the end of the contract year. See page 8 of Exhibit C.

23.    Plaintiff began receiving a paycheck from Mercy Health System on August 18, 2005 for the period July 31, 2005 to August 13, 2005. Pursuant to his employment agreement, Plaintiff received paychecks from Mercy Health System every-other-week based upon an estimate of his net professional patient billings.

24.    On or about October 12, 2006 Mercy Health System calculated Plaintiff's actual net professional billings and reconciled same with estimated payments already made to Plaintiff.

25.    On or about October 12, 2006 Plaintiff received a check from his employer, Mercy Health System, for the gross amount of One Hundred Eighty-Five Thousand Fifty-Three Dollars and 00/100 ($185,053.00). Attached hereto and made a part hereof as Exhibit "D" is a true and correct copy of the statement of earnings and deductions attached to said check.

6

26. On or about October 12, 2006 Mercy Health System adjusted Plaintiff's regular wage so that he no longer was suffering a twenty percent (20%) or more loss of income.

27. Accordingly, on or about October 12, 2006, Plaintiff became ineligible for continued disability benefits under his policy with Defendant.

28. Prior to October 12, 2006, Plaintiff contacted Defendant by telephone to inquire about how a check from Mercy Health System settling a disparity between estimated income and actual income due should be reported to Defendant and how Defendant would consider it in calculating Plaintiff's earnings.

29. Defendant responded to Plaintiff's inquiry in the telephone conversation and by follow-up correspondence. Defendant's response was that "earnings are typically used in the month that they are received." Attached hereto and made a part hereof as Exhibit "E" is a true and correct copy of April 24, 2006 correspondence from Defendant to Plaintiff regarding Plaintiff's inquiry.

30. After the adjustment to his gross income and after receiving the $185,053.00 check, Plaintiff reported same to Defendant.

31. Defendant ceased issuing disability benefits to Plaintiff effective October 1, 2006.

32. On or about February 26, 2007 Plaintiff received correspondence from Defendant informing him that Defendant had determined an overpayment of benefits to Plaintiff of Twenty-Six Thousand Six Hundred Thirty-Two and 00/100 Dollars ($26,632.00). The correspondence further informed Plaintiff that Defendant had terminated his policy coverage. Attached hereto and made a part hereof as Exhibit "F" is a true and correct copy of the February 26, 2007 correspondence from

7

Defendant to Plaintiff.

33. On or about March 23, 2007 Plaintiff responded in writing to Defendant's February 26, 2007 correspondence. Plaintiff also submitted a written appeal to Defendant's Benefits Center as Plaintiff was directed to do in the February 26, 2007 correspondence. Both of Plaintiff's writings indicated to Defendant that he disputed the overpayment and objected to the termination of his policy. Further, Plaintiff acknowledged that he became ineligible for benefits October 12, 2006 and was ready and willing to pay premiums due for the period thereafter.

34. On or about May 17, 2007 Defendant responded to Plaintiff in writing. In Defendant's May 17, 2007 correspondence it maintained its position that Defendant had made an overpayment of benefits to Plaintiff; however, Defendant agreed that Plaintiff's disability coverage should not have been terminated and specifically stated, "Dr. Persino would currently be eligible to continue his disability coverage and will be given the opportunity to do so by payment of the policy premiums which are due under the policy." Attached hereto and made a part hereof as Exhibit "G" is a true and correct copy of Defendant's May 17, 2007 correspondence. See page 1 of Exhibit G.

35. On or about June 19, 2007 Plaintiff responded in writing to Defendant's May 17, 2007 correspondence. Again, he disputed the overpayment, but indicated a willingness to pay the premiums due to reinstate his policy upon receipt of a statement for same.

36. On or about July 12, 2007 Defendant responded to Plaintiff in writing. Again Defendant claimed an overpayment of benefits to Plaintiff, and again Defendant

conceded that Plaintiff is eligible to continue disability coverage. In fact, Defendant's July 12, 2007 letter informs Plaintiff that his file has been returned to the Benefits Center for the purpose of determining policy premiums currently due to place Plaintiff's policy back in force.

37.    Since July 12, 2007 Plaintiff has not heard from Defendant in any way. Plaintiff has not received a statement for policy premium due since November 29, 2003.

## COUNT I
### Declaratory Judgment

38.    Plaintiff specifically realleges and reincorporates by reference Paragraphs 6 through 37 of his Complaint, and further alleges as follows:

39.    Plaintiff abided by the policy issued to him by Defendant and has lived up to each of his responsibilities thereunder.

40.    Defendant unjustly and unacceptably terminated Plaintiff's disability policy.

41.    Despite Plaintiff's requests for an invoice for policy premiums due and willingness to pay same, Defendant has failed to bill Plaintiff.

42.    Despite Defendant's written concessions that the policy should not have been terminated, Defendant has failed to reinstate Plaintiff's policy.

43.    Pursuant to 735 ILCS 5/2-701 this Court is empowered to adjudicate and declare the rights and obligations of the parties with respect to the policy issued to Plaintiff by Defendant, and to make final adjudications in the interpretation of said contract.

WHEREFORE, Plaintiff prays this Honorable Court to enter judgment in his favor, together with the following relief:

9

A.    A finding that the contract between the parties defines "earnings", in part, as "the monthly income from wage or salary You earn for services performed by You during each month of Residual Disability for which claim is made.  Monthly Income includes bonuses, commissions, fees or other remuneration earned for services performed by You from Your occupation after deduction of normal and customary business expenses but before deduction of any income taxes";

B.    A finding that the contract between the parties defines "pre-disability earnings" as "the average monthly income from Your Occupation for the 24 months immediately prior to the date the Disability began.  Monthly income includes bonuses, commissions, fees or other remuneration earned for services performed by You from Your occupation after deduction of normal and customary business expenses but before deduction of any income taxes.";

C.    A finding that the contract between the parties does not allow for an averaging of monthly income when calculating "earnings";

D.    A finding that, by the terms and definitions of the contract, the $185,053.00 paid to Plaintiff on October 12, 2006 can only be considered as monthly income for Dr. Persino in October, 2006;

E.    A finding that, accordingly, no overpayment of disability benefits has been made by Defendant to Plaintiff;

F.    A finding that the contract between the parties  provides, in part, that coverage will terminate when "You retire or cease to be actively engaged,

10

on a full-time basis in Your occupation, *for a reason other than Disability*" (emphasis added);

G.     A finding that Plaintiff has been, since November 25, 2002, and is working on a part-time basis because of his Disability;

H.     A finding that, accordingly, any termination of Plaintiff's coverage is wrongful and in breach of the contract between the parties;

I.     A finding that no overpayment of disability benefits has been made by Defendant to Plaintiff.

J.     Immediate reinstatement of Plaintiff's disability insurance policy;

K.     To enter judgment in favor of Plaintiff and against Defendant along with an award of damages to include costs and attorney's fees; and

L.     To award any other relief this Court deems just and proper.

## COUNT II
## Breach of Contract

44.     Plaintiff specifically realleges and reincorporates by reference Paragraphs 6 through 37 of his Complaint, and further alleges as follows:

45.     Plaintiff substantially performed his obligations under the contract between the parties by timely paying policy premiums as they became due and were invoiced.

46.     Plaintiff sent demands for invoices and reinstatement to Defendant.

47.     Despite these demands, Defendants has breached its contract with Plaintiff by terminating Plaintiff's policy.

48.     Plaintiff has been forced to seek the services of an attorney in responding to Defendant's termination of his policy, submitting a written appeal of same,

making demands for invoices and reinstatement, and ultimately in the filing of this suit. Accordingly, Plaintiff has incurred substantial legal expenses.

49.    Plaintiff has been without disability insurance coverage since Defendant unjustly terminated his policy in February, 2007.

50.    As a direct and proximate result of the material breach of the contract by Defendant, Plaintiff has suffered damages.

WHEREFORE, Plaintiff, RICHARD L. PERSINO, respectfully prays that this Court enter judgment in its favor and against Defendant UNUM GROUP d/b/a UNUM LIFE INSURANCE COMPANY OF AMERICA, in excess of $50,000.00, plus attorney fees and costs; and for any other relief this Court deems just and proper.

## COUNT III
### Fraud

51.    Plaintiff specifically realleges and reincorporates by reference Paragraphs 6 through 37 of his Complaint, and further alleges as follows:

52.    Defendant by its representations, misstatements and omissions of material facts, made fraudulent statements concerning reinstating Plaintiff's disability insurance policy, upon which it intentionally, deliberately, and/or recklessly, intended that Plaintiff would rely.

53.    Plaintiff has been forced to seek the services of an attorney in responding to Defendant's termination of his policy, submitting a written appeal of same, making demands for invoices and reinstatement, and ultimately in the filing of this suit. Accordingly, Plaintiff has incurred substantial legal expenses.

12

54.    Plaintiff has been without disability insurance coverage since Defendant unjustly terminated his policy in February, 2007.

55.    Plaintiff, in reliance upon these fraudulent statements and as a result of the omissions of material fact and in reliance upon the integrity of Defendant, has suffered damages.

WHEREFORE, Plaintiff, RICHARD L. PERSINO, respectfully prays that this Court enter judgment in its favor and against Defendant UNUM GROUP d/b/a UNUM LIFE INSURANCE COMPANY OF AMERICA, in excess of $50,000.00, plus attorney fees and costs; and for any other relief this Court deems just and proper.


By: _____
    Plaintiff, Richard L. Persino


This pleading prepared by the undersigned and executed in according with Supreme Court Rule 137.


_____
Rebecca M. Lee
Attorney for Plaintiff


GUMMERSON & RAUSCH, LLC
101 S. Benton Street, Suite 201
Woodstock, IL 60098
Phone: 815/337-7700

13

## VERIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief, and as to such matters, the undersigned certifies as aforesaid that he verily believes the same to be true.

_Richard L. Persino, MD_

Richard L. Persino

SUBSCRIBED and SWORN to before me this 21st day of November 2007.

_Beth A. Sofie_
Notary Public

**"OFFICIAL SEAL"**
Beth A. Sofie
Notary Public, State of Illinois
My Commission Expires Nov. 10, 2008

GUMMERSON & RAUSCH, LLC
101 S. Benton Street, Suite 201
Woodstock, IL 60098
Phone: 815/337-7700
Fax:    815-337-7990

# Unum Life Insurance Company of America
### 2211 Congress Street, Portland, Maine 04122

#### SCHEDULE

IMPORTANT: THIS IS PART OF YOUR CERTIFICATE. IT IS EVIDENCE OF YOUR COVERAGE AND SHOULD BE ATTACHED TO YOUR CERTIFICATE. THIS SCHEDULE REPLACES AND CANCELS ALL OTHER SCHEDULES, IF ANY ISSUED TO THE INSURED NAMED HEREON UNDER SAID CERTIFICATE AND IS SUBJECT TO ALL THE EXCEPTIONS, LIMITATIONS AND PROVISIONS HEREOF.

POLICYHOLDER:    THE AMERICAN COLLEGE OF OBSTETRICIANS AND GYNECOLOGISTS

PLAN:    DISABILITY INCOME

POLICY NO: 1074

CERTIFICATE NO: 703923

INSURED:  RICHARD L. PERSINO, MD
          3612 NEEDLE CREEK CT
          CRYSTAL LAKE, IL 60012

POLICY EFFECTIVE DATE: 07/01/2001

SCHEDULE DATE: 05/19/2003

POLICY ANNIVERSARY DATE: JULY 1

INSURED OCCUPATION PERIOD:  THE MAXIMUM BENEFIT PERIOD

TERMINATION AGE: 65

UNDER AGE 65 MONTHLY BENEFIT: $ 5,000

ELIMINATION PERIOD:  60 DAYS ACCIDENT OR SICKNESS

MAXIMUM BENEFIT PERIOD:  TO AGE 65

MAXIMUM DISABILITY PLUS BENEFIT: N/A

DISABILITY PLUS ELIMINATION PERIOD: N/A

MAXIMUM DISABILITY PLUS BENEFIT PERIOD:  SAME AS MAXIMUM BENEFIT PERIOD

COVERAGE AUTOMATICALLY TERMINATES ON THE POLICY ANNIVERSARY DATE FOLLOWING THE INSURED'S 70TH BIRTHDAY.

MONTHLY DISABILITY BENEFIT MAXIMUM IS LIMITED TO $1,100 ON POLICY ANNIVERSARY DATE FOLLOWING ATTAINMENT OF AGE 65 IN COMBINATION WITH ANY ACOG DISABILITY INCOME PLANS IN EFFECT FOR THE INSURED AT THAT TIME.

MAXIMUM BENEFIT PERIOD REVERTS TO 2 YEARS ACCIDENTS, 2 YEARS SICKNESS UPON ATTAINMENT OF AGE 64 AND 1 YEAR ACCIDENT, 1 YEAR SICKNESS UPON ATTAINMENT OF AGE 65.

NOTE:  DISABILITY DUE TO MENTAL OR NERVOUS CONDITIONS (AS DESCRIBED HEREIN) IS LIMITED TO A MAXIMUM OF 24 MONTHS.

LH 14207.



EXHIBIT
A

# Unum Life Insurance Company of America
## 2211 Congress Street, Portland, Maine 04122

**SECTION I.**                                    **CERTIFICATION STATEMENT**

CERTIFIES that the person to whom this certificate is issued is insured under and subject to all provisions, definitions, limitations and conditions of The Policy at 12:01 a.m. Standard Time, on the Effective Date shown in the attached Schedule provided the required first premium has been paid. If, because of Injury or Sickness, You are not actively at work at Your occupation on the date Your insurance would become effective, insurance will take effect on the date You perform for a full normal workday the regular duties of Your occupation. Your insurance is subject to any revision of The Policy agreed on by both the Policyholder and Us on the effective date of such revision.

In this certificate, the Insured will be referred to as "You", "Your" or "Yours" and Unum Life Insurance Company of America as "We", "Our" or "Us".

The Group Policy is in the possession of the Policyholder and may be inspected by You at any time during business hours at the office of the Holder.

This certificate replaces and cancels all other certificates, if any, issued to You under said Group Policy.

**RIGHT TO EXAMINE CERTIFICATE**

You have the right to examine this certificate. If You are not satisfied You may return it to Us within 30 days after receipt. We will refund the premium You paid and coverage will be considered to have never been in effect.

**SECTION II.**                                    **SCHEDULE**

This certificate is not valid unless the Schedule is attached.

Signed for the Unum Life Insurance Company of America.

President                                    Secretary

LH 14207

(1074)

# TABLE OF CONTENTS

                                                                                        **Section**

Certification Statement ................................................................................................ I

Schedule. ................................................................................................................ II

Definitions .............................................................................................................. III

Disability Benefits ................................................................................................... IV

Waiver of Premium .................................................................................................. V

Benefit Reduction .................................................................................................... VI

Recurrent Disability. ................................................................................................ VII

Lifetime Continuation Provision ............................................................................... VIII

Limitations ............................................................................................................... IX

Exclusions. .............................................................................................................. X

Individual Terminations ........................................................................................... XI

Exhaustion of Benefits ............................................................................................ XII

Uniform Provisions .................................................................................................. XIII

## SECTIONS III.          DEFINITIONS

The following are key words and phrases used in this certificate. When these words and phrases, or forms of them, are used, they are capitalized. As this certificate is read, refer back to these definitions. Any word in the male gender equally applies to the female gender unless a distinction is specified.

**"Actively-at-Work"** means You must be:

1.  Working at Your usual place of business; and
2.  Performing the substantial and material duties in Your regular occupation on a full-time basis a minimum of 26 hours per week.

**"Appropriate and Regular Care"** means that You are regularly visiting a Doctor as frequently as medically required to meet Your basic health needs. The effect of the care should be of demonstrable medical value for Your disabling condition(s) to effectively attain and/or maintain Maximum Medical Improvement. Maximum Medical Improvement is the level at which, based on reasonable medical probability, further material recovery from, or lasting improvement to, an Injury or Sickness can no longer be reasonably anticipated.

**"Complications of Pregnancy"** means:
1.  Conditions, requiring hospital confinement, whose diagnosis are distinct from pregnancy but adversely affected or caused by pregnancy, such as:

    a.  Acute nephritis or nephrosis;

    b.  Cardiac decompensation;

    c.  Missed abortion; or

    d.  Similar medical and surgical conditions of comparable severity.

2.  A non-elective caesarean section;

3.  Termination of ectopic pregnancy;

4.  Spontaneous termination of pregnancy occurring during a period of gestation in which a viable birth is not possible.

    However, the term Complication of Pregnancy will not include:

    a.  False labor, occasional spotting or morning Sickness;

    b.  Physician prescribed rest;

    c.  Pre-eclampsia;

    or any similar condition associated with the management of a difficult pregnancy not consisting of a nosologically distinct Complication of Pregnancy.

**"Disability"** means a Total Disability or Residual Disability.

**"Doctor"** means a person legally licensed to practice medicine, psychiatry, psychology or psychotherapy, who is neither Your nor a member of Your immediate family. A licensed medical practitioner is a Doctor if applicable state law requires that such practitioners be recognized for purposes of certification of Disability, and the treatment provided by the practitioner is within the scope of his or her license.

Doctor does not include:

1.  You; or

2.  A member of Your household; or

3.  A member of Your Immediate Family; or

4.  Your business partner, associate or employee.

3

"**Earnings**" means the monthly income from wage or salary You earn for services performed by You during each month of Residual Disability for which claim is made. Monthly Income includes bonuses, commissions, fees or other remuneration earned for services performed by You from Your occupation after deduction of normal and customary business expenses but before deduction of any income taxes. Monthly Income does not include dividends, rents, royalties, annuities or other forms of unearned income or any income You receive not directly derived from Your occupation.

"**Earnings Qualifier**" means that You may be considered Disabled during and after the Elimination Period if an Injury or Sickness is causing physical or mental impairment to a degree of severity that You are unable to perform all of the Material and Substantial duties of Your Occupation on a full-time basis, however You are:

1. Gainfully employed in any occupation for which You are qualified by education, training or experience, on a full-time or part-time basis; and

2. Receiving Appropriate and Regular Care from a Doctor, other than Yourself; and

3. Disabled to the extent that You are unable to earn more than 80% of Your Pre-Disability Earnings.

"**Elimination Period**" means the number of days, at the beginning of each period of continuous Disability, stated in the Schedule of Benefits, that You must be Disabled before Disability Benefits become payable.

"**Gainful Employment**" or "**Gainfully Employed**" means the performance of any occupation for wages, remuneration or profit, for which You are qualified by education, training or experience on a full-time or part-time basis and which we approve and for which We reserve the right to modify approval in the future.

"**Generally Accepted Medical Practice**" or "**Generally Accepted in the Practice of Medicine**" means care and treatment which is consistent with relevant guidelines of national medical, research and health care coverage organizations and governmental agencies.

"**Hospital or Health Care Facility**" is a legally operated, accredited facility licensed to provide full-time care and treatment for the condition causing Your Disability. It is operated by a full-time staff of licensed Doctors and registered nurses. It does not include facilities which primarily provide custodial, educational or rehabilitative care.

"**Immediate Family**" means Your spouse, children, brothers, sisters or parents.

"**Injury**" means bodily Injury caused by an accident which results in a loss, directly and independently of all other causes. The Injury must occur and Disability must begin while Your coverage is in force.

In addition to the above, with respect to the amount of a Total Disability Benefit Increase, 'injury' shall mean bodily injury caused by an accident occurring after the effective date of such increase and while You are covered under The Policy and resulting directly and independently of all other causes in loss covered by the Policy.

"**Insured**" means You, the member of the Policyholder who is named as the Insured in the Schedule of Benefits and whose insurance is in force under the terms of the Policy.

"**Insured Occupation Period**" means that period shown in the Application.

"**Loss of Earnings Ratio**" is equal to:

A – B where A = Pre-Disability Earnings

B = Monthly Earnings during Disability

**"Material and Substantial Duties"** means the necessary functions of Your Occupation which cannot be reasonably omitted or altered.

**"Mental or Emotional Disorder"** means a mental, nervous or emotional disorder found in the current Diagnostic Standards Manual of the American Psychiatric Association. This does not include Alzheimer's Disease or other types of organic disorders.

**"Occupation"** means Your usual and customary duties, recognized nationally, that You were performing at the time You became Disabled. Your occupation does not mean the job that you were performing for Your specific employer at the time You became Disabled.

**"Partial Disability"** means that You, because of Injury or Sickness, are:

1.  continuously unable to perform the substantial and material duties of Your regular occupation;

2.  under the regular care of a physician, other than Yourself; and

3.  gainfully employed in Your regular occupation on a partial and/or part-time basis.

**"Pre-Disability Earnings"** means the average monthly income from Your Occupation for the 24 months immediately prior to the date the Disability began. Monthly income includes bonuses, commissions, fees or other remuneration earned for services performed by You from Your occupation after deduction of normal and customary business expenses but before deduction of any income taxes. Monthly Income does not include dividends, rents, royalties, annuities or other forms of unearned income or any income You receive not directly derived from Your occupation.

**"Schedule of Benefits"** means Statement 8 of the Application for the Policy.

**"Sickness"** means the sickness or disease causing loss which begins while Your coverage is in force. With respect to the amount of a Total Disability Benefit Increase, "sickness" means sickness or disease which first manifests itself after the effective date of such increase and You are covered under The Policy.

**"Specialty"** with respect to doctors and dentists, means the general or sub-specialty in which You are practicing for which there is a specialty or sub-specialty recognized by the American board of Medical Specialties. If the American Board of Medical Specialties does not recognize the sub-specialty in which You are practicing, You will be considered practicing in the general specialty category.

**"Total Disability"** means that, during the Elimination Period and Your Occupation Period, Injury or Sickness causes physical or mental impairment to a degree of severity that You are;

1.  Continuously unable to perform the Material and Substantial Duties of Your Occupation;

2.  Receiving Appropriate and Regular Care from a licensed Doctor other than Yourself; and

3.  Not gainfully employed.

**"Total Disability"** will be presumed after the Elimination Period if Injury or Sickness results in Your total and irrecoverable loss of the following, which cannot be restored or corrected by medical or surgical treatment:

1.  Speech; or

2.  Hearing in both ears; or

3.  Sight in both eyes; or

4.  Use of both hands, or both feet, or one hand and one foot; and

You are not Gainfully Employed.

**"Total Disability"**, for the Insured who tests positive for the Human Immune Deficiency Virus (HIV), means any loss of time, duties and income as a result of any regulation, restriction or modification of policy set by:

1.  A licensing board;

2.  The Centers for Disease Control and Study;

3.  The Occupational Safety and Health Administration;

4.  A hospital, clinic board or an employer; or

5.  Any State or Federal Agency.

**"We"**, **"Our"** or **"Us"** means the Unum Life Insurance Company of America.

## SECTION IV.                          DISABILITY BENEFITS

**General Benefit Information**

1.  The Elimination Period, the Monthly Benefit, and the Maximum Period Payable are shown in the Schedule of Benefits.

2.  Disability benefits are not payable during the Elimination Period nor beyond the Maximum Period Payable.

3.  While Disabled, You are eligible to receive one of the following benefits at any given time: a Total Disability Benefit, or a Residual Disability Benefit. Except as specifically stated in the Policy, not more than one of these benefits will be payable at any one time nor shall the total of all benefit payments under the Policy exceed the Maximum Period payable for any period of Disability.

    If You require a professional license or certification for Your Occupation, loss of that professional license or certification does not in and of itself constitute Disability under the Policy.

4.  We will only pay for a Disability that begins while Your coverage is in force. Termination of such coverage will not affect a claim for Disability that begins before termination.

5.  If a benefit is payable for a period less than one month, We will pay 1/30th of the Monthly Benefit for each day of Disability.

**Total Disability Benefit**

We will pay a Total Disability Benefit for each month of Total Disability which continues after the Elimination Period. The Total Disability Benefit will be equal to the Monthly Benefit shown in the Schedule less all other Disability or income benefits from the sources listed in the Benefit Reduction provision.

**Residual Disability Benefit**

We will pay a Residual Disability Benefit, if You satisfy the Earnings Qualifier, for each month of Disability which follows: (1) the Elimination Period; or (2) a period for which Total Disability Benefits were payable. The Residual Disability Benefit will be equal to the Monthly Benefit amount multiplied by the Loss of Earnings Ratio. Residual Disability Benefits will cease on the earliest of the following to occur: (1) the date You earn more than 80% of Your Pre-Disability Earnings; (2) the date You are no longer Disabled; or (3) the end of the Maximum Period Payable.

**Human Immune Deficiency Virus Benefit**

If You become Totally Disabled due to the Human Immune Deficiency virus (HIV), We will pay the Monthly Benefit for each month of such Total Disability which follows the Elimination Period, provided:

1.  We receive due proof of the results of any testing as designated by the Centers for Disease Control and Study which would have deemed You as being HIV positive; and

2.  Written documentation, is received by Us from a physician, clinic board, hospital or Your employer barring You from performing the substantial and material duties of Your occupation.

6

We reserve the right to request Our own testing as recommended by the Centers for Disease Control and Study.

## SECTION V                                WAIVER OF PREMIUM

If You become Disabled and benefits become payable under the Policy for 6 successive months, We will waive any subsequent premium that becomes due for as long as benefits are payable for the Disability. During this period, Your coverage will remain in force. When You are no longer eligible for Waiver of Premium Your coverage can be continued in force by payment of the premiums that become due subject to the Policy provisions.

## SECTION VI:                              BENEFIT REDUCTION

The Monthly Benefit, together with any Disability or other income benefits received from the sources below, will not exceed 70% of Your Pre-Disability Earnings. The Monthly Benefit under this Plan will be reduced by the other sources of income to the extent that the other sources of income plus the Monthly Benefit exceed 70% of Your Pre-Disability Earnings.
Sources of income are the benefits paid, payable or for which there is a right under:
  1. Any other group policy providing disability income benefits;
  2. Any franchise Disability income plans;
  3. Any individual Disability income plans.

### Minimum Benefit Payment

In no event will Your Monthly Benefit for Total Disability, after the Benefit Reductions, be less than 10% of Your gross Monthly Benefit, or $500, whichever is greater. The Minimum Benefit Payment does not apply if You are Gainfully Employed.

The Monthly Benefit, after the reductions stated above, if any, will not be further reduced for subsequent cost-of-living increases which are paid, payable, or for which there is a right under any of the sources of income shown above.

## SECTION VII:                             RECURRENT DISABILITY

In no event will You be considered to have more than one Disability at the same time. Once a period of Disability starts, it is considered as one continuous period of Disability no matter what Injury or Sickness causes it to continue. A continuous period of Disability ends when You are no longer Disabled. If the Disability begins again due to the same or related causes within 6 months after the end of a prior Disability, such period of Disability will be deemed as continuous with the prior period of Disability. Such recurrent Disability shall be subject to the provisions of the policy that were in effect at the time the prior Disability began. Disability must recur while the coverage is in force under the policy. Periods of Disability not deemed continuous shall be subject to a new Elimination Period and Maximum Period Payable, and other terms of this Policy in effect on the date the Disability recurs.

## SECTION VIII:                            LIFETIME CONTINUATION PROVISION

Your Certificate may be exchanged for an individual long term care contract issued by Us without submitting evidence of medical or financial insurability, at the following times:

1. On or after age 61, if You choose to terminate Your Coverage under this disability Master Policy and You are not then Disabled, or Disability Plus Disabled, if applicable, under any of the terms of this Master Policy and Your Certificate; or

2. On or after age 65 if You are Disabled, or Disability Plus Disabled, if applicable, under the provisions of this disability Master Policy and Your Certificate and have received the maximum benefits allowable under Your Certificate; or

3.  On the Certificate renewal date when Your age is 70.

The long term care contract will be issued subject to the following terms:

1.  The contract will be the individual long term care contract that We offer when the exchange is made;
2.  The contract will meet or exceed all applicable federal and state minimum standards in effect for such contracts on the date the exchange is made;

The premium for the long term care contract will be the same as the premium paid for Coverage under this Master Policy and Your Certificate in the year immediately prior to the exchange.  The monthly benefit for the long term care contract will be the amount that this premium will purchase based on the long term care rates We are then charging in the state where You live and for Your age on the date the exchange is made.

## SECTION IX:                                    LIMITATIONS

Disabilities due to Mental or Emotional disorders, alcoholism or drug addiction have a limited pay period up to a lifetime maximum of 24 months.  In no case will benefits be paid past the end of the Maximum Benefit Period.

## SECTION X:                                    EXCLUSIONS

The Policy does not cover any loss caused by or resulting from:

1.  Declared or undeclared war or an act of either;

2.  An intentionally self-inflicted Injury (including suicide or attempted suicide), while sane or insane;

3.. Pregnancy or childbirth, except Complications of Pregnancy;

4.  Any condition which is the subject of a waiver or impairment rider attached to your Certificate;

5.  Travel or flight in, or getting in or out of:
    a.  An aircraft being used for test or experiment;
    b.  An aircraft the Insured is operating or learning to operate, or is part of the crew;
    c.  A military aircraft, other than transport aircraft flown by the U. S. Military Airlift Command (MAC), or a similar air transport service of another country.

Benefits shall be payable under the Policy either for Injury or Sickness, but not for both, during any concurrent period of Disability.

## SECTION XI:                                    INDIVIDUAL TERMINATIONS

Your coverage will terminate on the earliest of the following dates:
1.  The date the Policy is terminated;
2.  The date at the end of the period for which premium has been paid, if the required premium is not paid within 31 days following such premium due date;
3.  The date You reach the termination age shown in the Schedule;
4.  On the date the Policyholder withdraws sponsorship, or sponsors another plan;
5.  On the date You:
    a.  retire or cease to be actively engaged, on a full-time basis in Your occupation, for a reason other than Disability; or

      b.  are no longer associated with the Policyholder in a capacity making You eligible for insurance.

However, Our acceptance of premiums beyond the date of continued eligibility for coverage will not continue coverage beyond the dates specified in 5. above. Any unearned premium will be refunded.

**Guaranteed Continuation of Coverage to Age 70**

If the Policyholder terminates the Policy or if Your insurance terminates in accordance with 1 above, and if You are under age 70, You may transfer Your coverage to another policy that We offer which provides the same level of benefits for loss of income and standard group rates that were in effect at the time of termination. Evidence of insurability will not be required. However, written request must be made to Us and the first premium paid within 31 days of the termination date before Your coverage will take effect. This insurance replacement plan would be under a policy which is guaranteed renewable by Us. As with coverage under this policy, there would be no coverage provided beyond 70 years of age.

**SECTION XII:**                **EXHAUSTION OF BENEFITS**

Coverage will cease when benefits have been paid for the Maximum Benefit Period Payable. No further benefits will be paid for any Total Disability, regardless of cause.
Upon return to full-time active work at least 30 consecutive days, You may re-apply for coverage, without evidence of insurability, if:

    1.  You are then an eligible person;

    2.  Written application for coverage is made to Us within 30 days after such return; and

    3.  The required premium for Your age and plan at the time of application is paid.

Coverage shall take effect on the first day of the month following Our approval of the application.

No coverage will be provided for any Disability resulting from the same or related causes of the Disability which existed when benefits were exhausted until You have resumed full-time Active Work for a period of at least 6 months.

**SECTION XIII:**                **UNIFORM PROVISIONS**

**Notice of Claim:** Written notice must be given to Us within 30 days after any loss covered by the Policy. If notice cannot be given within that time, it must be given as soon as reasonably possible.  The notice will be sufficient if it identifies You. It must be sent to Us at [18 Chestnut Street, Worcester, MA 01608], or given to Our agent.

**Claim Forms:** After We receive the written notice of claim, We will furnish claim forms within 15 days. If We do not, the claimant will be considered to have met the requirements for written proof of loss if We are given written proof of the extent and nature of the loss.

**Written Proof Of Loss:** Written proof of loss must be given to Us within 90 days after the date of such loss. If it is not reasonably possible, the claim is not affected if the proof is given as soon a possible. Unless You are legally incapacitated, written proof must be given within one year of the time it is otherwise due.

**Time of Payment of Claim:** Benefits payable under the Policy for any loss which requires periodic payment will be paid monthly subject to receipt of due written proof of loss. Any balance remaining unpaid upon termination of liability will be paid upon receipt of due written proof.

**Payment of Claim:** All benefits are paid to You or Your estate, unless You have assigned them elsewhere.  If benefits are payable to the estate, We may pay up to $1,000 to any of Your relatives whom We feel is entitled to the benefits. Any payment made in good faith will discharge Us to the extent of the payment.

9

**Misstatement of Age:** If Your age has been misstated, the benefit payable under the Policy will be in an amount that the premiums paid would have purchased at Your true age. If coverage would not have been issued, We will refund the premium paid.

**Physical Examination:** At Our expense, We have the right to have You examined as often as reasonably necessary while the claim continues. We reserve the right to select the examiner. Failure to comply with this examination will suspend or terminate benefits, unless We agree that You have a valid and acceptable reason for not complying.

**Entire Contract; Changes:** The Policy, Master Application, Certificates of Coverage, Your individual applications, riders, and any other attached papers constitute the entire contract between the parties. Any statements made by the Policyholder or by You shall, in the absence of fraud, be deemed a representation and not a warranty. No such statement shall void the insurance, reduce the benefits or be used in defense to a claim under the Policy unless it is contained in a written application signed by the Policyholder or You, a copy of which has been furnished to the Policyholder or You (or Your personal representative), whoever made the statement.

No agent has the right to change the Policy or to waive any of its provisions. No change in the Policy is valid unless approved in writing on the Policy by one of Our officers.

**Time Limit on Certain Defenses:** No such statement of the Policyholder, except a fraudulent misstatement, shall be used to void the Policy after it has been in force for two years. Nor shall a statement by You, in the absence of fraud, be used in defense to a claim for Disability commencing after Your coverage has been in force for two years. (We will consider the 2 year time period to begin as of the Insured's effective date under the Previous Policy.) No claim for disability commencing after 2 years from the effective date of Your coverage shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss, had existed prior to the effective date of Your coverage. With respect to only the amount of a Total Disability Benefit Increase, We shall consider the 2 year time periods to begin as of the effective date of such increase. While You are covered under The Policy, any loss not payable under The Policy which would have been payable under the Previous Policy, had it continued in force, will be paid according to the benefit provisions of the Previous Policy.

**Clerical Error:** Neither clerical error in keeping any records pertaining to insurance under The Policy, nor delays in making entries thereon, shall invalidate insurance otherwise validly in force or continue insurance otherwise validly terminated; but upon discovery of such error or delay, an equitable adjustment of premium shall be made.

**Grace Period:** A grace period of 31 days is allowed for the payment of each premium due after the first premium. The Policy will remain in force during the grace period. However, if at least 60 days before the premium due date We have sent written notice to the Policyholder's last address shown in Our records of Our intent to non-renew the Policy, or if the Policyholder gives Us written notice to non-renew the Policy, the grace period will not apply to any period after the date the non-renewal is to be effective.

**Refund of Unearned Premium at Death:** If You die, We will make a pro-rata refund of premium paid for a period beyond the date of death.

**Legal Actions:** No action at law or in equity can be brought until after 60 days following the date written proof of loss was given. No action can be brought after three years (in Kansas and Tennessee, 5 years, in South Carolina and Wisconsin, 6 years) from the date written proof is required.

**Conformity with State Statutes:** If any provision of the Policy conflicts with the statutes of the state in which the Policy was delivered or issued, it is automatically changed to meet the minimum requirements of the statute. The Policy is not in lieu of and does not affect any requirements for coverage by Workers' Compensation Insurance.

Dr. Richard Persino's 2000 earnings

| 2000 | Pay Date | Gross Pay | Net Pay | Pension Contribution |
|------|----------|-----------|---------|----------------------|
| Qtr1 | 01/03/00 | 12,375.00 | 7,425.00 | 25,500.00 |
|  | 01/17/00 | 10,000.00 | 5,135.00 | |
|  | 01/24/00 | 5,600.00 | 2,875.60 | |
|  | 01/31/00 | 12,375.00 | 7,425.00 | |
|  | 02/14/00 | 6,556.24 | 3,563.31 | |
|  | 02/21/00 | 8,000.00 | 4,108.00 | |
|  | 02/28/00 | 12,375.00 | 7,425.00 | |
|  | 03/13/00 | 6,000.00 | 3,081.00 | |
|  | 03/27/00 | 4,400.00 | 2,351.24 | |
| Total |  | 77,681.24 | 43,389.15 | |
| Qtr2 | 04/03/00 | 12,375.00 | 7,425.00 | |
|  | 04/10/00 | 4,000.00 | 2,112.00 | |
|  | 04/17/00 | 8,000.00 | 4,604.00 | |
|  | 04/24/00 | 8,000.00 | 4,604.00 | |
|  | 05/01/00 | 12,375.00 | 7,425.00 | |
|  | 05/08/00 | 6,800.00 | 3,913.40 | |
|  | 05/15/00 | 6,000.00 | 3,081.00 | |
|  | 05/22/00 | 10,000.00 | 5,755.00 | |
|  | 05/29/00 | 5,200.00 | 2,992.60 | |
|  | 06/12/00 | 12,375.00 | 7,425.00 | |
|  | 06/26/00 | 4,800.00 | 2,762.40 | |
| Total |  | 89,925.00 | 52,099.40 | |
| Qtr 3 | 07/03/00 | 12,375.00 | 7,425.00 | |
|  | 07/17/00 | 6,000.00 | 3,633.00 | |
|  | 07/24/00 | 4,000.00 | 2,422.00 | |
|  | 08/07/00 | 12,375.00 | 7,425.00 | |
|  | 08/14/00 | 12,000.00 | 7,006.00 | |
|  | 08/21/00 | 14,000.00 | 8,477.00 | |
|  | 09/04/00 | 12,375.00 | 7,425.00 | |
|  |  | 73,125.00 | 43,813.00 | |
| Qtr 4 | 10/09/00 | 12,375.00 | 7,425.00 | |
|  | 10/16/00 | 8,000.00 | 4,604.00 | |
|  | 11/06/00 | 12,375.00 | 7,425.00 | |
|  | 11/13/00 | 8,000.00 | 4,604.00 | |
|  | 11/20/00 | 14,000.00 | 8,477.00 | |
|  | 11/27/00 | 12,375.00 | 7,425.00 | |
|  | 12/11/00 | 6,800.00 | 4,117.40 | |
|  | 12/25/00 | 3,609.00 | - | |
|  |  | 77,534.00 | 44,077.40 | |
| Total Earnings for '00 |  | 318,265.24 | 183,378.95 | |



EXHIBIT
B1

Dr. Richard Persino's 2001 earnings

| 2001 | Pay Date | Gross Pay | Net Pay | Pension Contribution |
|---|---|---|---|---|
| Qtr1 | 01/12/01 | 12,100.00 | 7,150.00 | 25,500.00 |
| | 01/26/01 | 5,000.00 | 2,717.50 | |
| | 02/02/01 | 8,000.00 | 4,348.00 | |
| | 02/03/01 | 5,452.86 | 2,963.64 | |
| | 02/09/01 | 12,100.00 | 7,150.00 | |
| | 02/23/01 | 2,900.00 | 1,489.15 | |
| | 03/02/01 | 2,500.00 | 1,283.75 | |
| | 03/16/01 | 12,100.00 | 7,150.00 | |
| | 03/23/01 | 5,000.00 | 2,567.50 | |
| | 03/30/01 | 5,000.00 | 2,567.50 | |
| Total | | 70,152.86 | 39,387.04 | |
| | | | | |
| Qtr2 | 04/06/01 | 12,100.00 | 7,150.00 | |
| | 04/20/01 | 5,000.00 | 2,992.38 | |
| | 04/27/01 | 5,000.00 | 2,877.50 | |
| | 05/04/01 | 12,100.00 | 7,150.00 | |
| | 05/11/01 | 5,000.00 | 2,877.50 | |
| | 05/18/01 | 5,000.00 | 2,877.50 | |
| | 06/01/01 | 5,000.00 | 2,877.50 | |
| | 06/08/01 | 12,100.00 | 7,150.00 | |
| | 06/08/01 | 5,000.00 | 2,877.50 | |
| | 06/29/01 | 5,000.00 | 2,877.50 | |
| Total | | 71,300.00 | 41,707.38 | |
| | | | | |
| Qtr 3 | 07/06/01 | 12,100.00 | 7,150.00 | |
| | 07/13/01 | 5,000.00 | 2,857.50 | |
| | 07/20/01 | 5,000.00 | 2,857.50 | |
| | 07/27/01 | 5,000.00 | 2,917.50 | |
| | 08/03/01 | 12,100.00 | 7,150.00 | |
| | 08/10/01 | 5,000.00 | 2,877.50 | |
| | 08/17/01 | 5,000.00 | 2,877.50 | |
| | 08/24/01 | 5,000.00 | 2,877.50 | |
| | 08/31/01 | 5,000.00 | 2,877.50 | |
| | 09/07/01 | 12,100.00 | 7,150.00 | |
| | 09/14/01 | 5,000.00 | 2,877.50 | |
| | 09/28/01 | 5,000.00 | 2,877.50 | |
| | | 81,300.00 | 47,347.50 | |
| | | | | |
| Qtr 4 | 10/05/01 | 12,100.00 | 7,150.00 | |
| | 10/19/01 | 7,500.00 | 4,316.25 | |
| | 10/26/01 | 5,000.00 | 2,877.50 | |
| | 11/02/01 | 12,100.00 | 7,150.00 | |
| | 11/09/01 | 5,000.00 | 2,877.50 | |
| | 11/16/01 | 5,000.00 | 2,877.50 | |
| | 11/23/01 | 10,000.00 | 5,755.00 | |
| | 11/30/01 | 8,000.00 | 4,604.00 | |
| | 12/07/01 | 12,100.00 | 7,150.00 | |
| | 12/28/01 | 6,500.00 | 3,740.75 | |
| | 12/28/01 | 1,715.00 | - | |
| | 12/28/01 | 3,733.64 | - | |
| | | 88,748.64 | 48,498.50 | |
| | | | | |
| Total Earnings for '01 | | 311,501.50 | 176,940.42 | |



EXHIBIT

B2

Dr. Richard Persino's 2002 earnings

| 2002 | Pay Date | Gross Pay | Net Pay | Pension Contribution | | | | | |
|------|----------|-----------|---------|---------------------|---|---|---|---|---|
| Qtr1 | 01/04/02 | - | - | 30,000.00 | | | | | |
| | 01/04/02 | 12,100.00 | 7,150.00 | | | | | | |
| | 01/11/02 | 2,000.00 | 1,027.00 | | | | | | |
| | 01/18/02 | - | - | | | | | | |
| | 01/18/02 | 3,000.00 | 1,707.90 | | | | | | |
| | 01/25/02 | 3,806.33 | 1,954.57 | | | | | | |
| | 02/01/02 | 6,000.00 | 3,081.00 | | | | | | |
| | 02/08/02 | 12,100.00 | 7,150.00 | | | | | | |
| | 02/15/02 | 3,000.00 | 1,540.50 | | | | | | |
| | 02/22/02 | 5,000.00 | 2,567.50 | | | | | | |
| | 03/01/02 | 5,000.00 | 2,567.50 | | | | | | |
| | 03/08/02 | 12,100.00 | 7,150.00 | | | | | | |
| Total | | 64,106.33 | 35,895.97 | | | | | | |
| | | | | | | | | | |
| Qtr2 | 04/19/02 | 12,100.00 | 7,150.00 | | | | | | |
| | 04/19/02 | 5,000.00 | 2,567.50 | | | | | | |
| | 04/26/02 | 5,000.00 | 2,798.49 | | | | | | |
| | 05/03/02 | 5,000.00 | 2,877.50 | | | | | | |
| | 05/10/02 | 12,100.00 | 7,150.00 | | | | | | |
| | 05/24/02 | 5,000.00 | 2,877.50 | | | | | | |
| | 05/31/02 | 5,000.00 | 2,877.50 | | | | | | |
| | 06/14/02 | 12,100.00 | 7,150.00 | | | | | | |
| | 06/14/02 | 5,000.00 | 2,877.50 | | | | | | |
| | 06/21/02 | 5,000.00 | 2,877.50 | | | | | | |
| | 06/28/02 | 2,500.00 | 1,438.75 | | | | | | |
| Total | | 73,800.00 | 42,642.24 | | | | | | |
| | | | | | | | | | |
| Qtr 3 | 07/12/02 | 12,100.00 | 7,150.00 | | | | | | |
| | 07/12/02 | 5,000.00 | 2,877.50 | | | | | | |
| | 07/19/02 | 5,000.00 | 2,877.50 | | | | | | |
| | 07/26/02 | 5,000.00 | 2,877.50 | | | | | | |
| | 08/02/02 | 12,100.00 | 7,150.00 | | | | | | |
| | 08/09/02 | 5,000.00 | 2,877.50 | | | | | | |
| | 08/16/02 | 5,000.00 | 2,877.50 | | | | | | |
| | 08/23/02 | 5,000.00 | 2,877.50 | | | | | | |
| | 08/30/02 | 5,000.00 | 2,877.50 | | | | | | |
| | 09/06/02 | 12,100.00 | 7,065.93 | 6,370.00 | 2,420.60 | | 92.37 | 191.10 | 3,665.93 |
| | 09/13/02 | 3,000.00 | 1,846.65 | 5,730.00 | 1,719.75 | 355.26 | 83.09 | 171.90 | 3,400.00 |
| | 09/27/02 | 5,000.00 | 2,757.35 | 12,100.00 | 4,140.35 | 355.26 | 175.46 | 363.00 | 7,065.93 |
| | | 79,300.00 | 46,112.43 | | | | | | |
| | | | | | | | | | |
| Qtr 4 | 10/04/02 | 6,370.00 | 7,065.93 | 5,730.00 | 1,719.75 | 355.26 | 83.09 | 171.90 | 3,400.00 |
| | 10/11/02 | 5,000.00 | 2,757.35 | | | | | | |
| | 10/18/02 | 5,000.00 | 2,757.35 | | | | | | |
| | 10/25/02 | 5,000.00 | 2,877.50 | | | | | | |
| | 11/08/02 | 6,370.00 | 7,065.93 | 5,730.00 | 1,719.75 | 355.26 | 83.09 | 171.90 | 3,400.00 |
| | 11/22/02 | 5,000.00 | 2,877.50 | | | | | | |
| | 11/29/02 | 5,000.00 | 2,877.50 | | | | | | |
| | 12/06/02 | 5,730.00 | - | | | | | | |
| | 12/06/02 | 5,730.00 | - | | | | | | |
| | 12/13/02 | 6,730.00 | 3,975.50 | | | | | | |
| | 12/27/02 | 1,715.00 | - | | | | | | |
| | 12/31/02 | 3,600.00 | 2,071.80 | | | | | | |
| | | 61,245.00 | 34,326.36 | | | | | | |
| | | | | | | | | | |
| Total Earnings for '02 | | 278,451.33 | 158,977.00 | | | | | | |
| | | (278,451.33) | | | | | | | |

DISABILITY
1-25-2002 →

EXHIBIT
B3

**OFFER EXPIRES: July 11, 2005**

## PHYSICIAN AGREEMENT

This document is an agreement (the "Agreement") between Mercy Health System Corporation and Richard L. Persino, M.D.  For ease of reference, the document will refer to Mercy Health System Corporation as "Mercy", "we" or "us" and Richard L. Persino as "you" or "your".

1.    **Mercy.**

1.1    <u>Mercy.</u>   Mercy is a tax-exempt integrated health care delivery system.  Mercy provides hospital, physician and other health care services in Southern Wisconsin and Northern Illinois.

1.2    <u>Physician</u>.  You are a physician qualified or will be qualified to practice in the state(s) in which you will work for Mercy.  Your medical specialty is obstetrics and gynecology ("OB/GYN").

1.3    <u>Consideration</u>.  Mercy has determined that recruitment of a physician in your specialty is in the best interests of Mercy and the patients we serve.  Together, you and we agree that for good and valuable consideration, we have entered into this Agreement.

2.    **Term, Responsibilities and Compensation.**

2.1    <u>Term.</u>  Your work with us will start on the later of the following dates:

   (a)  August 1, 2005;

   (b)  the date on which you obtain membership on our clinic medical staff; or

   (c)  the date the board of directors approves this Agreement.

The date you commence work is the "Effective Date".  Your work with us will begin on the Effective Date and will continue for one year.  This period is the "Initial Term".  The Agreement renews automatically at the end of the term for additional one-year terms unless the Agreement is terminated sooner under Section 3.

2.2    <u>Your Responsibilities.</u>

   (a)    <u>Part-time Work.</u>  As of the Effective Date, you will work with us part-time.  You agree to perform the duties typically performed by a doctor in your specialty.  Those duties include those performed typically by similar doctors working with us.  It is not possible to describe in a written agreement everything a doctor at Mercy does.  However, a general description of your duties and expectations is contained on Exhibit A to the Agreement.  In addition, you will cooperate and consult with other physicians, you will accept referrals as your schedule and appropriate medical care warrant, you will participate in practice and hospital call schedules and you will provide follow-up to patients of referring doctors.  Unless we agree otherwise in writing, you will work exclusively for Mercy.  Without our written permission, you will not moonlight, engage in any activity that interferes with your obligations under the Agreement, participate in any professional activity for compensation or undertake any activities in competition with us.



(b)    Operational Matters.  You agree to work within our normal management structure with respect to operational matters.

(c)    Medical Staff Privileges.  You agree to obtain and maintain medical staff privileges with hospitals you and we deem necessary for the delivery of care for Mercy patients.  You also will maintain active clinic privileges with the Mercy system.  You will comply with the bylaws of medical staffs of those hospitals where you maintain privileges.  In addition, you agree to comply with applicable standards of the Joint Commission on Accreditation of Healthcare Organizations, the American Medical Association, the conditions of participation under Medicare and Medicaid programs and standards and regulations of other organizations or governmental bodies with authority over Mercy and you.

(d)    Policies and Procedures.  We will give you access to our policies and procedures. You agree to comply with our policies and procedures and to act in a professional manner consistent with our standards.

(e)    Quality Assurance.  You will participate in our quality assurance programs and any evaluation of the quality and appropriateness of medical services performed at Mercy.

(f)    Licenses and Certifications.  In order to meet practice requirements, you will: maintain an unrestricted license to practice medicine in the state(s) in which you will practice; an unrestricted Drug Enforcement Administration Registration;; maintain board certification in OB/GYN throughout the tenure of the Agreement; and submit evidence of licensure, registration and certification to us on an annual basis within ten (10) days of receipt of license, certification, registration or renewals.

(g)    Records and Files.  We own all patient files, records and business information to which you have access during your work with us.  Both during and after the term of your work with us, you may not remove any records or information from our facilities unless you do so in the normal and proper course of performance of your duties under this Agreement or unless we give you permission in writing to do so.

(h)    Background Check.  You will cooperate with us so that we may carry out background checks required by state and federal law.  This means that you will complete any forms or provide information that may be necessary to carry out the background check.  You also agree to update your background information as required by our policies and applicable law.  Mercy has the discretion to delay the Effective Date until background checks have been completed.

2.3    Responsibilities of Mercy.

(a)    Space and Equipment.  We will provide space, equipment and supplies reasonably necessary for you to provide services to patients.  You agree to use the space, equipment and supplies only for your practice purposes.

(b)    Personnel.  We will provide personnel, such as nurses and billing specialists, normally needed for your practice.

(c)    Marketing.  We will conduct marketing activities reasonably necessary to support your practice.

2

(d)    Professional Judgment. We will not unreasonably exercise control, direct or interfere with your exercise and execution of professional judgment in a manner that adversely affects your ability to provide quality care to patients.

2.4    Compensation. We will pay you the compensation in accordance with Exhibit B. We will provide benefits as described in Exhibit C in accordance with the terms of applicable plans and policies.

## 3.    Termination.

3.1    Termination. This Agreement will terminate as follows:

(a)    Voluntary Termination.

(i)    You or we may terminate the Agreement at the end of the Initial Term by giving at least ninety (90) days written notice before the end of the Initial Term. If you or we provide this notice, the Agreement will terminate either at the end of the Initial Term or at an earlier date to which you and we agree in writing. If we provide notice under this subparagraph, we may in our discretion require that you cease performing services during the ninety (90) day period. If we do that, we will pay you compensation based on the amount we paid you during the ninety (90) days preceding the termination notice period.

(ii)    During any additional one (1) year term, the Agreement will terminate if either you or we provide at least ninety (90) days written notice of termination. If we provide such notice we may, in our discretion, require that you cease performing services during the ninety (90) day period. If we do that, we will pay you compensation based on the amount we paid you during the ninety (90) days preceding the termination notice period.

(b)    Termination for Disability.

If you become disabled, we may terminate this Agreement if, after one (1) year from the onset of the disability, your disability has not ceased and you cannot resume performance of your job. "Disability" is defined under the disability insurance plan ("Disability Plan") described in Exhibit C.

(c)    Termination for Cause.

If you or we commit a material breach of the Agreement, and if you or we fail to correct the breach within thirty(30) days after written notice, you or we may terminate the Agreement for cause immediately or at any designated future time if the breach continues or resumes. You or we may terminate by delivering a written notice of termination. The notice must describe the material breach and the effective time of termination.

(d)    Automatic Termination.

The Agreement will terminate automatically if: (1) you die; (2) you cease to be a member of Mercy's clinical staff; (3) your license to practice medicine or your Drug Enforcement Administration Registration is suspended, revoked or limited; (4) your medical staff privileges at any hospital are restricted in any way; (5) you are excluded from government payment programs; (6) we are unable to provide malpractice insurance described in Section 5; (7) you are convicted of a crime if the crime relates to the practice of medicine or the crime is a bar to practicing medicine at any of

3

Mercy's facilities;  (8) you breach the confidentiality obligations of this Agreement; (9) you engage in behavior that, in our reasonable judgment, is so disruptive that your practice cannot reasonably be conducted; or (10) you fail to maintain or obtain required board certification.

3.2  Effect of Termination.

(a)  Cessation of Obligations.  If the Agreement is terminated, your obligations cease on the date of termination, except as set forth in Section 3.3 or as otherwise provided in the Agreement. We will pay you any compensation to which you are entitled and which is accrued and is unpaid as the date of the termination.

(b)  Termination of Privileges.  In the event the Agreement is terminated, you agree that any of your staff privileges with Mercy System or at any Mercy hospital shall automatically terminate concurrently with the termination of the Agreement and that you will be entitled to no hearing and appeals procedures.

3.3  Competition Restrictions.

You agree that Mercy has expended considerable resources in recruiting and retaining you. In order to protect our expenditure, you agree that for one (1) year following termination of this Agreement, you will not provide within Kane, McHenry, or Lake Counties in the State of Illinois the same or similar services described in this Agreement. We agree that this restriction does not apply if we terminate this Agreement in accordance with Section 3.1 (a), or if you terminate in accordance with Section 3.1 (c). Furthermore, this restriction does not apply if following termination you practice in Kane, McHenry or Lake County, Illinois in a professional corporation with five (5) or fewer full-time equivalent practicing physicians.

4.  **Billing**

4.1  Collection of Professional Fees.

Mercy will bill for all your services. All compensation for your services belongs to us.

4.2  Policies.

You agree to follow our policies and procedures with respect to the billing process. This means that you will complete medical record documentation, reports and other documents necessary for billing and related purposes. You will do this timely and in accordance with our directions.

4.3  Physician Participation in Health Delivery or Payment Plans.

You will participate in third party payment or managed care plans in accordance with our direction. You will abide by all applicable requirements and guidelines of third party payment and health delivery plans and will complete any documentation necessary for participation in those plans. You and we agree that it is important that we are able to participate in various payment plans and that plan credentialing and quality assurance activities are essential for participation. Therefore, you agree that we may provide and receive credentialing and quality assurance information to and from managed care plans.

5.    **Insurance**

5.1    <u>Professional Liability Insurance.</u>

(a)    Following the Effective Date, you will continue your ISMIE professional liability insurance at ISMIE's standard coverage limitations for doctors in your specialty. We will pay the costs and assessments for ISMIE insurance. After the two-year period, at our option, we may convert to our then current professional liability insurance or self-insurance arrangement. If we make that conversion, we will be responsible for providing insurance or self-insurance necessary to cover periods before the Effective Date.

(b)    Following termination of this Agreement, we will either provide self-insurance for tail liability or pay the cost of tail insurance, on a prorated basis, if we have not purchased occurrence professional liability insurance and if under our then existing policies tail insurance is necessary to maintain continuous coverage of professional liability risks. The proration will be over a five-year period. If you remain with us for at least five years, we will pay the full cost of tail insurance or full accrual for self-insurance. If you remain with us for fewer than five years, we will pay for tail coverage according to the following formula: tail insurance premium or accrual for self-insurance multiplied by a fraction, the denominator of which is sixty (60) and the numerator of which is the number of full calendar months following the Effective Date.

5.2    <u>Other Insurance.</u>

Mercy will obtain other insurance policies as are typically obtained to cover liabilities associated with the medical practice. These polices will include general liability insurance and workers compensation insurance.

6.    **General**

6.1    <u>Benefit and Assignment.</u>

This Agreement is intended for your and our benefit, and for the benefit of any of our permitted assigns and successors. The Agreement is not entered into for the benefit of any other person. You may not assign any of your rights or obligations under the Agreement. We may assign this Agreement to an "Affiliate" if the Affiliate is required to assume our obligations and duties. An "Affiliate" means any entity (1) which has a controlling interest in Mercy, (2) in which Mercy has a controlling interest, or (3) which is under common control with Mercy.

6.2    <u>Entire Agreement.</u>

This document is our entire Agreement. This document supercedes any other agreements, oral or written, between you and us. Any modifications of this Agreement will be effective only if you and we sign a document to that effect.

6.3    <u>Notices.</u>

5

If you or we give notice under this Agreement, we will do so in writing delivered to your or our normal business address in any reasonable manner.

6.4    Governing Law.

This Agreement will be construed in accordance with and governed by the laws of the State of Illinois.

6.5    Waivers.

If you or we waive any breach of this Agreement, that waiver will not extend to any other breach.

6.6    Severability

If any provision of this Agreement is found to be unenforceable in any respect, you and we agree that the remaining provisions will not be affected.

6.7    Confidentiality.

You agree that the substance and terms of this Agreement are confidential. You will not disclose the substantive terms of this Agreement to third parties without our consent. "Third Party" means any person or entity other than your legal and accounting representatives.

**MERCY HEALTH SYSTEM CORPORATION**

By: _____

Javon R. Bea, President & CEO                    Date

By: _____    7-9-05

Richard L. Persino, M.D.                          Date

6

## EXHIBIT A

### Job Description

Title:   Physician   Name:  Richard L. Persino, M.D. Specialty: OB/GYN

General Summary:

   You are responsible for the maintenance of an OB/GYN practice in Crystal Lake, Illinois.  At our reasonable request, you will also assist us in the establishment and maintenance of medical practices in other locations as necessary.  You will provide needed professional services at your clinic locations.

Responsibilities and Duties:

You will:

1.   Provide professional services to our patients and assure continuity of care for those patients.

2.   As we may reasonably require, work with the designated administrator to provide input into the budgets, capital expenditures, strategic planning and marketing, to the extent that these duties do not interfere with your performance of the first duty described above.

3.   As we may reasonably require, assist with the selection, supervision and evaluation of technical and clerical staff, to the extent that these duties do not interfere with your performance of the first duty described above.

4.   As we may reasonably require, assist us in recruitment of additional physicians to the area, to the extent that these duties do not interfere with your performance of the first duty described above.

5.   As we may reasonably require, become involved in community activities and community health education and promotion, to the extent that such duties do not interfere with your performance of the first duty described above.

6.   Perform all other duties as we may reasonably require to the extent that these duties do not interfere with your performance of the first duty described above and with the purpose of this Agreement.

The above statements are intended to describe the general nature and level of work to be performed by you.  They are not to be construed as an exhaustive list of all of your responsibilities and duties.

## EXHIBIT B

### Compensation

(a)  <u>Compensation</u>.  We will pay you fifty percent (50%) of your Net Professional Patient Billings ("NPPB").  NPPB means:  gross professional patient billings for physician services (but not for ancillary services) including a fee for service equivalency for services provided to capitated programs, less Medicare and Medicaid contractual write-offs, usual and customary reductions by private insurances and managed care discounts.  We will pay you in installments in accordance with our normal payroll practices.  We will estimate installment payments by reference to your NPPB in the immediately preceding Contract Year.  At the end of each Contract Year, we will determine the total of estimated payments in that Contract Year (the "Total Estimated Amount") and fifty percent (50%) of your NPPB in that Contract Year (the "Total Actual Amount").  If the Total Actual Amount exceeds the Total Estimated Amount, we will pay you the amount of such excess within one hundred twenty (120) days of the end of such Contract Year.  If the Total Estimated Amount exceeds the Total Actual Amount, we may deduct such excess from subsequent biweekly payments to you.

(b)  <u>Compensation in Year of Termination</u>.  In the year this Agreement ends, we will determine the total of your estimated payments in that Contract Year up to the date of such termination (the "Total Estimated Termination Amount"); within a one hundred twenty (120) day period, we will calculate fifty percent (50%) of your NPPB in that Contract Year up to the date of termination (the "Total Actual Termination Amount").  If the Total Actual Termination Amount exceeds the Total Estimated Termination Amount, we will pay to you the amount of the excess within thirty (30) days after the end of the one hundred twenty (120) day period.  If the Total Estimated Termination Amount exceeds the Total Actual Termination Amount, you will pay us the amount of the excess within thirty (30) days after the end of the one hundred twenty (120) day period.  We may deduct such excess from any payments we may otherwise owe to you.  If you and we disagree about how much you or we owe each other in the year of termination, you and we will submit the matter for resolution by two arbitrators in accordance with the American Health Lawyers Association Alternative Dispute Resolution Service Rules of Procedure for Arbitration.  The arbitration will be conducted in Janesville, WI.  Each party will select an arbitrator from a list provided by the American Health Lawyers Association Alternative Dispute Resolution Service ("Service") within ten days after the list is provided.  After the two arbitrators are selected, the arbitrators will meet promptly to resolve the matter.  If the arbitrators are unable to resolve the matter within sixty (60) days after the selection of the second arbitrator, then a third arbitrator will be appointed by the two arbitrators, or if they cannot agree, the third arbitrator will be selected by the arbitrators from a list provided by the Service.  Promptly after the third arbitrator has been selected, the three arbitrators will resolve the matter.  A decision by a majority of the arbitrators will resolve the matter.  A decision by a majority of the arbitrators will be binding on the parties.  Each party will pay the respective fees of the arbitrator appointed by that party and one-half of the cost of appointing and the fees of the third arbitrator.  Each party will be responsible for its own costs and expenses, including attorneys' fees.

8

**EXHIBIT C**
Fringe Benefit Summary
(Part-Time Physician)

1.    Vacations and Holidays:

Because you will be paid on a production basis, you will not receive "paid" vacation days. You may take time off as you choose. You are responsible for arranging practice coverage. We observe the following holidays: New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day.

2.    Professional Meetings, Seminars, and Materials:

You may take CME days when you choose. You are responsible for arranging practice coverage. For each Contract Year we will reimburse you up to three thousand dollars ($3,000) per year for reasonable CME expenses related to the performance of your duties.

3.    Licensing Fees and Professional Membership Dues:

We will pay all fees necessary to maintain your (a) unrestricted license(s) to practice medicine in the states you practice for us, (b) membership in the appropriate state medical society and (c) membership in an appropriate county medical society. We will pay any fee necessary to maintain your board certification. We will also pay for your membership in up to two (2) other professional organizations.

4.    Health and Dental Insurance:

We have health and dental insurance plans that provide benefits to eligible persons on the first day of work. We pay for all related premiums. We will provide information about the plans at your request.

5.    Disability Insurance and Group Term Life Insurance:

We have a long-term disability insurance plan that provides benefits to eligible persons after ninety (90) days of work. We pay all related premiums. We have a group term life insurance plan that provides benefits to eligible persons beginning on the first day of the month following thirty (30) days of work. We pay all related premiums. You may purchase additional life insurance or dependent life insurance. We will provide information about the plans upon request.

We have a group term life insurance plan. You may participate in that plan on the first day of the month following thirty (30) days after you start working for us. If you work full-time, the plan provides term life insurance coverage equal to your annual salary, with minimum coverage of one hundred fifty thousand dollars ($150,000) and maximum coverage of three hundred thousand dollars ($300,000). We pay the premiums for this coverage. You may purchase additional insurance on your life and the lives of your dependents.

9

6.    <u>Salary Continuation</u>:

    If you become disabled (as defined in the Disability Plan), we will continue to pay compensation (exclusive of fringe benefits) until the earlier of: (i) the date that is ninety (90) days after the onset of the disability or (ii) the date on which the disability ceases and the Disability Insurance Plan determines that you are no longer disabled. This compensation will be based on your average compensation in the twelve (12) months before your disability and will be reduced by any amounts you receive under the Disability Plan. Unless required by law, we will not be obligated to pay any compensation after ninety (90) days from the onset of disability. If you are eligible and in accordance with its terms, the Disability Plan will pay benefits after ninety (90) days of disability. If your disability extends beyond periods specified by family and medical leave laws, we will place you on a leave of absence for a period of up to one (1) year. Entitlement to and payment for fringe benefits will then be governed by our leave of absence policies.

7.    <u>Malpractice Insurance</u>:

    We provide professional liability insurance. We pay all related premiums.

8.    <u>Retirement Plan</u>:

    Mercy has a non-contributory defined benefit pension plan in which you participate after one (1) year of service (as defined in the plan). Under this plan, you will be credited with four percent (4%) of pay up to the Social Security wage base, plus six percent (6%) of pay over the Social Security wage base up to the Federal wage cap for each eligible year of service. Plan benefits will be fully vested after five (5) years of service (as defined in the Plan).

9.    <u>Matched Savings Plan (Retirement Plus (403(b))</u>:

    You may participate in Mercy's Matched Savings Plan, which allows you to contribute up to the Federal limit. After one year of service (as defined in the plan), Mercy will match up to two percent (2%) of your annual compensation depending on a number of factors, including how much you contribute.

10.    <u>Non-qualified Deferred Compensation Plans (457(b)</u>:

    You may participate in Mercy's voluntary non-qualified deferred compensation plans. These plans allow you to defer payment of all or a portion of your income.

Benefits are credited on a per pay period basis. Should this Agreement be terminated, other than by our breach of this Agreement or by your death or disability, before the first anniversary date of this Agreement, we may obligate you to repay vacation pay, professional meetings and seminar fees, and licensing and professional membership dues and moving expenses ("Repayment Benefits") paid in behalf of or to you before the first anniversary date. You agree that should you owe an amount for Repayment Benefits, Mercy may, without further notice, withhold from your salary or other payments due you, amounts sufficient to reimburse Mercy for the amount owed. If Mercy elects not to withhold such amounts, or if such withholdings would be insufficient to cover the amount owed, within forty-five (45) days of the effective date of termination of this Agreement, you must pay to us any amount then owed to Mercy. At our request, you will execute a promissory note or other evidence of such indebtedness.

This Exhibit is a summary of the benefits we currently provide. To the extent the summary is inconsistent with any benefit plan documents or written policies, the documents or written policies will control. Mercy reserves the right to modify any of the benefits at any time.

**MERCY HEALTH SYSTEM**
1000 MINERAL POINT AVENUE
JANESVILLE, WISCONSIN 53545

CHECK NO. 489444

REMIT DATE 10/12/2006

RICHARD L PERSINO                1002545          7840      00      09/24/2006   10/07/2006

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| PROD SETTLER | 185,053.00 | | 335,031.28 | FEDERAL | 74,021.20 | 101,089.46 |
| | | | | FICA | 0.00 | 5,840.40 |
| | | | | MHI | 2,683.27 | 4,751.31 |
| | | | | STATE | 5,551.59 | 8,975.91 |
| | | | | DIR DEP PERCEN | 0.00 | 75,265.44 |
| | | | | HLTH/DNTL IN | 0.00 | 5,747.50 |
| | | | | FLEX MED REIMB | 0.00 | 2,019.15 |
| | | | | TDA MATCHED | 0.00 | 5,769.22 |
| | | | | TDA NONMTCH | 0.00 | 10,400.00 |
| | | | | LIFE INSURANCE | 0.00 | 65.00 |
| | | | | TAXABLE GTL | 0.00 | 411.97 |
| | | | | DEF COMP 457(B | 0.00 | 12,310.95 |

0.00 GROSS EARN      185,053.00                        TOTAL DEDUCT   82,256.00   232,646.31

01 Don't Let the Flu Get You!

PLEASE DETACH AND RETAIN AS STATEMENT OF EARNINGS AND DEDUCTIONS

**NET PAY**                    102796.94



EXHIBIT

exhibit D



April 24, 2006

Richard L. Persino
3612 Needle Creek
Crystal Lake, IL  60012

**Policy #:    LAA1074**
**Claim #:    CLA031661**

Dear Dr. Persino:

Thank you for the courtesies you extended in our telephone conversation of April 21, 2006.

As discussed, when calculating your Residual Disability Benefit, earnings are typically used in the month that they are received. If you receive a bonus in July 2006, it would be considered earnings in July 2006.

Documentation of your earnings for March 2006 have been received and reviewed. Under separate cover, we have forwarded a check in the amount of $1473.00, representing benefits for the period of March 1, 2006 to April 1, 2006.

Enclosed with your check is a Claimant's Supplemental Statement. Please complete your portion, sign and date the authorization and return the completed forms to our office with documentation of your earnings for April 2006.

To ensure your benefits have been paid correctly for 2005, please provide a copy of your personal and business tax returns, to include all schedules, attachments and W-2 statements for 2005, when complete. If you have filed an extension, please provide a copy of that extension.

Dr. Persino, should you have any questions or concerns, please contact me at 1-800-817-7476, extension.75576.

Sincerely,

Sean L. Brissette

Sean L. Brissette
Senior Disability Benefits Specialist
Unum Life Insurance Company of America


EXHIBIT
E

UnumProvident Corporation  •  18 Chestnut Street, Worcester, MA  01608-1528  •  508.799.4441  •  www.unumprovident.com



**UNUMPROVIDENT**

February 26, 2007

Richard Persino, MD
3612 Needle Creek Ct.
Crystal Lake, IL  60012-6781

**Claim #:**     **CLA031661**

Dear Dr. Persino:

We are writing to update you on the status of your claim.  We have currently issued Residual Disability benefits to October 1, 2006.

As you know, your policy states **"Disability"** means a Total or Residual Disability.

> **"Total Disability"** means that, during the Elimination Period and Your Occupation Period, Injury or Sickness causes physical or mental impairment to a degree of severity that You are;
>
>> 1. Continuously unable to perform the Material and Substantial Duties of Your Occupation;
>>
>> 2. Receiving Appropriate and Regular Care from a licensed Doctor other than Yourself; and
>>
>> 3. Not gainfully employed.

**Total Disability Benefit.**

We will pay a Total Disability Benefit for each month of Total Disability which continues after the Elimination Period.  The Total Disability Benefit will be equal to the Monthly Benefit shown in the Schedule less all other Disability or income benefits from the sources listed in the Benefit Reduction provision.

> **"Partial Disability"** means that You, because of Injury or Sickness, are:
>
>> 1. continuously unable to perform the substantial and material duties of Your regular occupation;
>>
>> 2. under the regular care of a physician, other than Yourself; and
>>
>> 3. gainfully employed in Your regular occupation on a partial and/or part-time basis.

**Residual Disability Benefit.**

We will pay a Residual Disability Benefit if You satisfy the **Earnings Qualifier** for each month of Disability which follows:  (1) the Elimination Period; or (2) a period

UnumProvident Corporation · 18 Chestnut Street, Worcester, MA  01608-1528 · 508.799.4441 · www.unum



**EXHIBIT**

**F**

for which Total Disability Benefits were payable. The Residual Disability Benefit will be equal to the Monthly Benefit Amount multiplied by the Loss of Earnings Ratio. Residual Disability Benefits will cease on the earliest of the following to occur: (1) the date You earn more than 80% of Your Pre-Disability Earnings; (2) the date You are no longer Disabled; or (3) the end of the Maximum Period Payable.

"**Earnings Qualifier**" means that You may be considered Disabled during and after the Elimination Period if an Injury or Sickness is causing physical or mental impairment to a degree of severity that You are unable to perform all of the Material and Substantial duties of Your Occupation on a full-time basis, however You are:

    1. Gainfully employed in any occupation for which You are qualified by education, training or experience, on a full-time or part-time basis; and

    2. Receiving Appropriate and Regular Care from a Doctor, other than Yourself; and

    3. Disabled to the extent that Your are unable to earn more than 80% of Your Pre-Disability Earnings.

"**Loss of Earnings Ratio**" is equal to:

    A-B where A = Pre-Disability Earnings
              B = Monthly Earnings during Disability

"**Pre-Disability Earnings**" means the average monthly income from Your Occupation for the 24 months immediately prior to the date the Disability began. Monthly income includes bonuses, commissions, fees or other remuneration earned for services performed by You from Your occupation after deduction of normal and customary business expenses but before deduction of any income taxes. Monthly Income does not include dividends, rents, royalties, annuities or other forms of unearned income or any income You receive not directly derived from Your occupation.

"**Earnings**" means the monthly income from wage or salary You earn for services performed by You during each month of Residual Disability for which claim is made. Monthly income includes bonuses, commissions, fees or other remuneration earned for services performed by You from Your occupation after deduction of normal and customary business expenses but before deduction of any income taxes. Monthly Income does not include dividends, rents, royalties , annuities or other forms of unearned income or any income You receive not directly derived from Your occupation.

We have received and reviewed a copy of your contract with Mercy Health System Corporation. Your contract with Mercy Health System Corporation defines your **Compensation** as follows:

    (a) Compensation. We will pay you fifty percent (50%) of your Net Professional Patient Billings ("NPPB"). NPPB means: gross professional patient billings for physician services (but not for ancillary services) including a fee for service equivalency for services provided to capitated programs, less Medicare and Medicaid contractual write-offs, usual and customary reductions by private insurances and managed care discounts. We will pay you in installments in accordance with our normal payroll practices. We will estimate installment payments by reference to your NPPB in the immediately preceding Contract

Year. At the end of each Contract Year, we will determine the total of estimated payments in that Contract Year (the "Total Estimated Amount") and fifty percent (50%) of your NPPB in that Contract Year (the "Total Actual Amount"). If the Total Actual Amount exceeds the Total Estimated Amount, we will pay you the amount of such excess within one hundred and twenty (120) days of the end of such Contract Year. If the Total Estimated Amount exceeds the Total Actual Amount, we may deduct such excess from subsequent biweekly payments to you.

As you are aware, we have been evaluating your claim under the **Residual Disability Benefit** of your policy. We have reviewed the language of your policy and the documentation that you provided to date. On October 12, 2006, you received a Production Settlement of $185,053.00. Since this settlement amount is based upon your actual yearly production, and represents fees for your professional services, we have determined that it should be included in the calculation of your benefits for the applicable period of time (August 2005 through July 2006).

We have recalculated the Residual Disability benefits paid for the period of August 2005 through July 2006 by including an additional $15,421.00 per month in Earnings ($185,053.00 divided by 12). When we include this additional income in the calculation of the Loss of Earnings Ratio you did not have a loss of income. This has resulted in an overpayment of $26,632.00 during this period. We have enclosed a chart detailing this for your reference.

Your policy states that Residual Disability Benefits will cease on that date you earn 80% of your pre-disability income. This occurred August 1, 2005 and continued up to at least August 1, 2006. As you did not qualify for Residual Disability Benefits for at least 12 months, we are unable to consider further benefits under your policy at this time. Please contact our office to discuss a plan for repayment of the overpayment in the amount of $26,632.00.

Please note your policy provision for **RECURRENT DISABILITY** states:

> In no event will You be considered to have more than one Disability at the same time. Once a period of Disability starts, it is considered as one continuous period of Disability no matter what Injury or Sickness causes it to continue. A continuous period of Disability ends when You are no longer Disabled. If the Disability begins again due to the same or related causes within 6 months after the end of a prior Disability, such period of Disability will be deemed as continuous with the prior period of Disability. Such recurrent Disability shall be subject to the provisions of the policy that were in effect at the time the prior Disability began. Disability must recur while the coverage is in force under the policy. Periods of Disability not deemed continuous shall be subject to a new Elimination Period and Maximum Period Payable, and other terms of this Policy in effect on the date the Disability recurs.

Your Contract with Mercy Health System Corporation defines Salary continuation as:

6. Salary Continuation

If you become disabled (as defined in the Disability Plan), we will continue to pay compensation (exclusive of fringe benefits) until the earlier of: (i) the date that is

3

ninety (90) days after the onset of disability or (ii) the date on which the disability ceases and the Disability Insurance Plan determines that you are no longer disabled. This compensation will be based on your average compensation in the twelve (12) months before your disability and will be reduced by any amounts you receive under the Disability Plan. Unless required by law, we will not be obligated to pay any compensation after ninety (90) days from the onset of disability. If you are eligible and in accordance with its terms, the Disability Plan will pay benefits after ninety (90) days of disability. If your disability extends beyond periods specified by family and medical leave laws, we will place you on a leave of absence for a period of up to one (1) year. Entitlement to and payment for fringe benefits will then be governed by our leave of absence policies.

Your policy contains a **BENEFIT REDUCTION PROVISION** that states:

The Monthly Benefit, together with and Disability or other income benefits received fro the sources below, will not exceed 70% of Your Pre-Disability Earnings. The Monthly Benefit under this Plan will be reduced by the other sources of income to the extent that the other sources of income plus the Monthly Sources of income are the benefits paid, payable or for which there is a right under:

1. Any other group policy providing disability income.
2. Any franchise Disability income plans.
3. Any individual Disability income plans.

**Minimum Benefit Payment**

In no event will your Monthly Benefit for Total Disability, after the Benefit Reductions, be less than 10% of Your gross Monthly Benefit, or $500, which ever is greater. The Minimum Benefit Payment does not apply if you are Gainfully Employed.

The Monthly Benefit, after the reductions stated above, if any, will not be further reduced for subsequent cost-of-living increases which are paid, payable or for which there is a right under any of the sources of income shown above.

During our conversation of January 2, 2007, you reported that you have been on medical leave since December and expected to return to work by the end of January. Since you have not has a loss of earnings for at least twelve (12) months any new period of disability would be handled as a separate claim. Please note that under the Recurrent Disability provision of your policy outlined above, this would be considered a new period of disability and will be subject to a new Elimination Period and a new Maximum Benefit period. As we discussed, due to the salary continuation benefits you receive from your employer you would not be eligible for benefits during that period of time.

Your policy provision for **Waiver of Premium** reads:

If You become Disabled and benefits become payable under the Policy for 6 successive months We will waive any subsequent premium that becomes    due for as long as benefits are payable for the Disability. During this period, Your coverage will remain in force. When You are no longer eligible for Waiver of

4

Premium Your coverage can be continued in force by payment of the premiums that become due subject to the Policy provisions.

In accordance with your policy Waiver of premium will cease with an effective date of January 1, 2006.

Finally, please note **SECTION XI - INDIVIDUAL TERMINATIONS** states:

Your coverage will terminate on the earliest of the following dates:

1. The date the policy is terminated;
2. The date at the end of the period for which premium has been paid, if the required premium is not paid with 31 days following such premium due date;
3. The date You reach the termination age shown in the Schedule;
4. On the date the Policyholder withdraws sponsorship, or sponsors another plan;
5. On the date You:

   a. retire or cease to be actively engaged on a full time basis in Your occupation, for a reason other than Disability; or

   b. are no longer associated with the Policyholder in a capacity making You eligible for insurance

However, Our acceptance of premiums beyond the date of continued eligibility for coverage will not continue coverage beyond the dates specified in 5. above. Any unearned premiums will be refunded.

During our conversation on February 7, 2007, you stated that you are currently working 15 to 19 hours per week and that you believe that the hours noted on your check stubs is the hours that Mercy considers part-time. ,You further stated that you are actually working the same number of hours as prior to your disability. Your policy states that for coverage to continue you need to be engaged on a full time basis in Your Occupation. As you are not engaged on a full time basis in Your Occupation, your policy coverage has terminated.

If you have additional information to support your request for disability benefits, please send it to my attention for further review at the address noted on this letterhead.

However if you disagree with our determination and intend to appeal this claim decision, you must submit a written appeal. This appeal must be received by us within 180 days of the date of this letter. Your written appeal should include your comments and views of the issues, as well as any new documentation you wish us to consider. You should submit your written appeal to the following address:

Worcester Benefits Center
Appeals Unit
P. O. Box 15112
Worcester, MA 01615-0112

5

If we do not receive your appeal within 180 days of the date of this letter, our claim decision will be final.

Rule 9.19 of the Rules and Regulations of the Illinois Department of Insurance requires that our company advise you that if you wish to take this matter up with the Illinois Department of Insurance, it maintains a Consumer Division in Chicago at:

> 100 W Randolph Street
> Suite 15-100
> Chicago, IL 60601

and in Springfield at:

> 320 W Washington Street
> Springfield, IL 62767

If you have any questions or concerns, please feel free to give me a call toll free at 888-226-7959 extension 77073.

Sincerely,

Ann M Goodrow, ALHC, ACS, HIA
Disability Benefit Specialist
Unum Life Insurance Company

6

| Pre-Disabiity Earnings | Monthly Earnings | Loss ratio | Benefit Paid | |
|---|---|---|---|---|
| | before | before | | |
| $29,541.00 | $36, 811.00 | 0.00% | $0.00 | Aug. 05 |
| $29,541.00 | $20,193.00 | 31.64% | $1,582.00 | Sept. 05 |
| $29,541.00 | $13,990.00 | 52.64% | $2,632.00 | Oct. 05 |
| $29,541.00 | $13,990.00 | 52.64% | $2,632.00 | Nov. 05 |
| $29,541.00 | $14,010.00 | 52.57% | $2,628.50 | Dec. 05 |
| $29,541.00 | $14,066.00 | 52.38% | $2,619.00 | Jan. 06 |
| $29,541.00 | $14,090.00 | 52.30% | $2,615.00 | Feb. 06 |
| $29,541.00 | $20,837.00 | 29.46% | $1,473.00 | Mar. 06 |
| $29,541.00 | $14,097.00 | 52.27% | $2,613.50 | Apr. 06 |
| $29,541.00 | $14,100.00 | 52.26% | $2,613.00 | May. 06 |
| $29,541.00 | $14,105.00 | 52.25% | $2,612.50 | June. 06 |
| $29,541.00 | $14,111.00 | 52.23% | $2,611.50 | July .06 |
| | | | | |
| | | | $26,632.00 | Total Benefits Paid |
| | | | | |
| | Monthly earnings | Loss ratio | Adjusted | |
| | after | after | Benefit | |
| | $52,232.00 | -76.81% | $0.00 | |
| | $35,614.00 | -20.56% | $0.00 | |
| | $29,411.00 | 0.44% | $0.00 | |
| | $29,411.00 | 0.44% | $0.00 | |
| | $29,431.00 | 0.37% | $0.00 | |
| | $29,487.00 | 0.18% | $0.00 | |
| | $29,511.00 | 0.10% | $0.00 | |
| | $36,258.00 | 0.10% | $0.00 | |
| | $29,518.00 | 0.08% | $0.00 | |
| | $29,521.00 | 0.07% | $0.00 | |
| | $29,526.00 | 0.05% | $0.00 | |
| | $36,590.00 | -23.86% | $0.00 | |
| | | | | |
| | | | $26,632.00 | Overpayment Total |



18 Chestnut Street
Worcester, MA 01608-1528
508 799 4441
www.unum.com

May 17, 2007

Rebecca M. Lee, Esq.
Gummerson & Rausch, LLC
101 S. Benton Street, Suite 201
Woodstock, IL  60098

RE:    Richard Persino, MD
       Your File No.: 37059-000
       Our Claim No.: CLA031661

Dear Attorney Lee:

Thank you for taking the time to discuss Dr. Persino's claim with me on Wednesday, May 16, 2007. As we discussed, I have had the opportunity to review Dr. Persino's claim file and appeal and would like to update you on the status of my review.

Ann Goodrow's February 26, 2007 letter explained that Dr. Persino did not qualify for Residual Disability Benefits during the months August 2005 – July 2006. According to the information currently available, Dr. Persino received a production settlement payment on October 12, 2006 in the amount of $185,053. This payment was based on his actual production for the fiscal year August 1, 2005 – July 31, 2006. These earnings were paid to Dr. Persino in addition to his regular checks from Mercy Health System. In addition, the Benefit Center concluded that because Dr. Persino was not eligible for Residual Disability Benefits, and was not working full-time in his Occupation, the coverage/policy terminated.

As we discussed, I have determined that Dr. Persino would currently be eligible to continue his disability coverage and will be given the opportunity to do so by payment of the policy premiums which are due under the policy. However, the actual amount of policy premiums due may depend upon the information that we discussed and which is requested in this letter.

As you know, the Benefits Center has administered Dr. Persino's claim for Residual Disability Benefits from November 25, 2002 to October 1, 2006. Dr. Persino previously submitted quarterly profit and loss statements as verification of his monthly Earnings under his claim until he sold his practice and joined Mercy Health System as an employee. Since the time he joined Mercy Health System, Residual Disability Benefits have been paid based upon the financial information submitted (pay stubs with year-to-date earnings figures) each month in support of his claim. The company recently learned

EXHIBIT
G

UNUM PROVIDENT CUST CARE

that Dr. Persino received a production settlement payment for work he performed during the fiscal year August 1, 2005 through July 31, 2006. After having been advised of his production settlement payout, Dr. Persino's monthly Earnings were recalculated and compared against his Pre-Disability Earnings of $29,541.

Section IV of the policy entitled DISABILITY BENEFITS states, in part, that "We will pay a Residual Disability Benefit, if You satisfy the Earnings Qualifier…Residual Disability benefits will cease on the earliest of the following to occur: (1) the date You earn more than 80% of Your Pre-Disability Earnings…"

Dr. Persino's Earnings were recalculated to determine if he incurred the requisite 20% loss described by the policy to be eligible for Residual Disability Benefits. The monthly Earnings reconciliation calculations performed by the Financial Department included 1/12th of his $185,053 production settlement payment; or an additional $15,421 which was added to Dr. Persino's previously reported monthly Earnings (for the months August 1, 2005 – July 31, 2005). His earnings for this period totaled $396,510.00. His monthly Earnings calculations were as follows:

| | |
|---|---|
| August '05 | $ 52,232.00 |
| September '05 | $ 35,614.00 |
| October '05 | $ 29,411.00 |
| November '05 | $ 29,411.00 |
| December '05 | $ 29,431.00 |
| January '06 | $ 29,487.00 |
| February '06 | $ 29,511.00 |
| March '06 | $ 36,258.00 |
| April '06 | $ 29,518.00 |
| May '06 | $ 29,521.00 |
| June '06 | $ 29,526.00 |
| July '06 | $ 36,590.00 |

The Benefit Center has determined that an overpayment in the amount of $26,632.20 currently exists under Dr. Persino's claim. After reviewing the information currently available, I agree with the Benefit Center's assessment that an overpayment does appear to currently exist under Dr. Persino's claim. However, as we discussed, the amount of the overpayment could be significantly affected depending upon the receipt and review of the additional information which was requested during our telephone conversation and in this letter.

In order to further evaluate Dr. Persino's claim and appeal as well as determine the balance of any policy premiums currently due, we are in need of some additional information. During our telephone conversation, we discussed that Dr. Persino's Pre-Disability Earnings for the 24 months immediately prior to the date his disability could potentially be greater than previously calculated (previously calculated at $29,541 using his submitted quarterly P&L statements); and therefore affect the amount of any overpayment under his claim. I explained that we would need monthly profit and loss

statements for the 24 months prior to disability in order re-calculate his Pre-Disability Earnings. The information needed would include the November 2000 through October 2002 profit and loss statements for Crystal Lake OB-GYN Associates. We are currently in receipt of the eight quarterly profit and loss statements for his practice for the period October 2000 through September 2002. I understand that this monthly information (profit and loss statements) may not be available. We may be able to use some of the previously submitted quarterly profit and loss statements for this purpose. If this information is not available on a monthly basis, we may be unable to reconsider our calculations.

During our conversation, we also discussed Dr. Persino's on-call hours. You explained that you were not certain of Dr. Persino's on-call schedule and/or the manner in which he was compensated for the hours he worked as an on-call physician for Mercy Health System. I asked that you obtain information in this respect including verification of Dr. Persino's on-call schedule and the manner in which he is compensated by his employer for those hours worked.

It also appears as though Dr. Persino may have been completely out of work, in part, due to what has been reported by him as "Crohn's Syndrome." He reported to have been out and on medical leave from Mercy Health System until approximately February 12, 2007. When asked for the dates of this absence, you explained that you were uncertain of the exact dates, but thought he was on medical leave beginning approximately some time in early December 2006. You advised that you would contact Dr. Persino and provide us with the exact dates. You also indicated that Dr. Persino may be going out on full medical leave again in the near future. In addition to the specific dates that he was previously out of work, we also ask that you provide us with the name(s), address and telephone number of the doctor(s) who treated Dr. Persino for "Crohn's Syndrome" while he was out of work and on medical leave. Alternatively, please provide us with the relevant medical records related to this condition.

We also discussed Dr. Persino's Short Term Disability ("STD") and Long Term Disability ("LTD") coverage which we understand was obtained through his employment at Mercy Health System. During our conversation, you indicated that you thought that either his STD or LTD coverage (or perhaps both) was provided for by Mercy Health System and that the coverage was part of a self-insured plan. Please confirm this for us. Also, please provide us with the name(s) and addresses for both his STD and LTD carrier(s) as well as a copy of Dr. Persino's STD and LTD policy certificates. Please also advise if Dr. Persino was required to work full-time to be eligible for this coverage as well as the requirements for working full-time if applicable. We also ask that you provide us with a specific accounting (amounts and months paid) of any STD and/or LTD benefits paid to Dr. Persino since his disability began. This information will assist us in determining whether or not the BENEFIT REDUCTION PROVISION will need to be applied in the analysis of Dr. Persino's claim. The policy states,

> The Monthly Benefit, together with any disability or other income benefits received from the sources below, will not exceed 70% of Your Pre-Disability

Earnings. The Monthly Benefit under this Plan will be reduced by the other sources of income to the extent that the other sources of income plus the Monthly Benefit exceed 70% of Your Pre-Disability Earnings.

Sources of income are the benefits paid, payable or for which there is a right under:

1. Any other group policy providing disability income benefits;
2. Any franchise Disability income plans;
3. Any Individual Disability income plans.

Please forward the requested information to my attention within the next 45 days. In the event I do not receive all of the requested information by that time, we will resume billing Dr. Persino for the past due premiums based upon the information currently available. I have also enclosed a Claimant's Supplemental Statement which should be completed by Dr. Persino and his attending physician(s) for any additional period(s) of disability he may be claiming.

Again, thank you for taking the time to discuss Dr. Persino's claim and appeal with me and for your cooperation in gathering the information requested in this letter. Dr. Persino's claim will be given our further attention upon receipt of the requested information. Please do not hesitate to contact me with any questions at (888) 226-7959, extension 76442.

Sincerely,

Johnathan P. Butler
Appeals Consultant
Benefits Center Compliance
Unum Life Insurance Company

Enc: CSS, RE